*434 OPINION OF THE COURT
Herman Cahn, J.
Plaintiffs move, pursuant to CPLR 6301, for a preliminary injunction enjoining the defendant, 635 Park Avenue Corp., a cooperative apartment corporation (Co-op), from: (1) considering, voting on or adopting a motion amending its proprietary leases to require persons engaged in litigation or administrative proceedings with the Co-op to settle their actions or claims prior to selling their apartments; and from (2) interfering with, delaying, resisting, impeding or withholding its approval of contracts to sell the shares of the apartment belonging to the estate of Jane Pickens Hoving or delaying or denying approval of potential buyers.
Plaintiffs are the executors of the estate of Jane Pickens Hoving (Mrs. Hoving), a shareholder-tenant of the Co-op since 1979. She purchased four shares of stock of the corporation, and entered into a proprietary lease with the Co-op for the twelfth floor of the building. Mrs. Hoving died on February 22, 1992.
This is an action for a permanent injunction to enjoin the Co-op from passing a proposed amendment to the proprietary leases, which plaintiffs allege would have the effect of preventing Mrs. Hoving’s estate from selling the apartment while continuing separate litigation against the Co-op.
On June 4, 1992, by means of a proxy solicitation, the Co-op gave notice of an annual meeting of the shareholders to be held on June 25, 1992, where votes would be taken on the proposed amendments to the proprietary leases, including one requiring persons involved in litigation or administrative proceedings with the Co-op to settle those proceedings prior to selling their shares in the Co-op. Mrs. Hoving’s proprietary lease presently contains no provision restricting the sale of the apartment during the pendency of litigation of claims between a tenant and the Co-op. The proposed amendment appears to be directed at plaintiffs and is designed to prevent the Co-op from becoming further indebted thereby allowing the Co-op to resolve its current financial problems by forcing persons bringing actions against the Co-op, to settle or discontinue those actions as a condition of selling their shares.
In 1991, Mrs. Hoving commenced an action against the Coop alleging breaches of her proprietary lease due to damage to her property resulting from leaks from the roof. Mrs. Hoving’s suit also seeks permanent injunctive relief prohibiting the Co *435 op from constructing an apartment above her apartment without the written consent of Mrs. Hoving or her heirs and assigns. Mrs. Hoving’s estate is now seeking to sell Mrs. Hoving’s apartment.
Cooperative corporations are sui generis in nature. A cooperative is generally a stock corporation formed pursuant to the Business Corporation Law. The corporation is the owner or long-term lessee of the building and related property. Owners of shares in the corporation, through the device of a proprietary lease, receive the right to occupy space in the premises to which their shares are allocated. The proprietary lease defines the relationship between the cooperative corporation and the shareholder-tenant with regard to their mutual rights and obligations. (See generally, All Seasons Resorts v Abrams, 68 NY2d 81; 4 Goldsmith and Leeds, New York Practice Guide, Real Estate § 37.02 [1].) Accordingly, for various purposes cooperatives are viewed as corporations or as real property. However, neither the corporate nor the leasehold or real property aspects of the relationship can be viewed in isolation from one another. (See, Fe Bland v Two Trees Mgt. Co., 66 NY2d 556; Matter of Carmer, 71 NY2d 781.)
This court recognizes that many individuals purchase cooperatives as equity investments for the future. (330 W. End Apt. Corp. v Kelly, 124 Misc 2d 870, affd 108 AD2d 1107, affd as mod 66 NY2d 556.) The imposition of restrictions on the sale of a cooperative unit and its representative shares cannot be studied in a vacuum without turning to the realities of the marketplace and the purposes and nature of ownership of cooperatives. While a cooperative represents to many owners the purchase of a place to live, it also represents an investment with hopes for profits upon resale. Accordingly, any restraint on alienation must be scrutinized carefully to insure that it does not offend public policy concerning the nature of cooperative ownership.
The proprietary leases of Co-op shareholder-tenants often contain restrictions on the transfer of the lease and stock, by requiring consent of the board of directors or a right of first refusal. Such consent provisions have consistently been upheld against the contention that they constitute unlawful restraints upon alienation.
In Penthouse Props, v 1158 Fifth Ave. (256 App Div 685 [1st Dept 1939]), the Court noted that the Co-op board’s power to grant or withhold consent may be a restraint upon alienation *436 of the stock shares, but is reasonable and appropriate to the lawful purposes to be attained. The Court identified the special nature of ownership in cooperative buildings by tenant owners who reside on the premises as the basis for this exclusion from the general rule against a restraint on the sale of stock in a corporation organized for profit. (Supra, at 692.) The Court also recognized that the stock ownership was merely incidental to the primary interest in the long-term proprietary lease, the alienation of which the corporation had the power to restrain, and if there was restraint upon the transfer of stock it was reasonable and appropriate. (See, Goldstone v Constable, 84 AD2d 519; Weisner v 791 Park Ave. Corp., 7 AD2d 75, 83 [Frank, J., dissenting] [1958], revd on other grounds 6 NY2d 426; Murphy v 253 Garth Tenants Corp., 579 F Supp 1150 [SD NY 1983].)
In Weisner (supra) the Court in its discussion of the Penthouse Props, holding stated that it did not embrace in its entirety the rule that the owners (of a Co-op apartment building) under any and all circumstances may arbitrarily refuse consent to a proprietary lessee to the sale of the lease and stock. Shareholder-tenants stock, therefore, seems to still be subject to the rule that there be no unreasonable restraint on alienation. (See, Allen v Biltmore Tissue Corp., 2 NY2d 534, 540 [1957]; Driscoll v West Bradley & Cary Mfg. Co., 59 NY 96; 2 White, New York Corporations ]f[j 601.02, 601.04 [13th ed].)
The instant case raises a matter of first impression in regard to whether a restriction on the transfer of a proprietary lease and stock in a Co-op pending the settling or discontinuance of litigation or claims against the cooperative is such an unreasonable restraint upon alienation.
While certain restrictions on the transfer of Co-op proprietary leases and stock are considered reasonable restraints on alienation and are therefore legal, as discussed above, others are completely unjustifiable and invalid. (See, General Obligations Law § 5-331; Bachman v State Div. of Human Rights, 104 AD2d 111.)
Additionally, cooperatives must act in good faith in dealing with their shareholder-tenants with regard to facilitating the transfer of shares. (See, Matter of Folic, 139 AD2d 456; Boisson v 4 E. Hous. Corp., 129 AD2d 523; Bernheim v 136 E. 64th St. Corp., 128 AD2d 434.) Furthermore, cooperative corporations and their boards of directors have a fiduciary duty to the shareholder-tenants and have a duty to act in an appropriate *437 and reasonable manner. (Demos v 325 W End Ave. Corp., 127 AD2d 476; Vinnik v 795 Fifth Ave. Corp., 94 AD2d 685, affd 62 NY2d 698.)
The court is aware that cooperative corporations may impose upon the shareholder-tenant a myriad of restrictions including a right of first refusal (Badowski v Roosevelt Terrace Coop., 148 AD2d 406), waiver of option fees (Amer v Bay Terrace Coop. Section II, 142 AD2d 704), requirement of board approval (Aronson v Crane, 145 AD2d 455) and flip taxes (Business Corporation Law § 501 [c]). However, such restrictions must be reasonable and not deprive a shareholder-tenant of the opportunity to take advantage of the free market in selling the shares to a particular unit. (524 E. Tenants Corp. v Preheim, NYLJ, Dec. 4, 1991, at 22, col 2 [Sup Ct, NY County, Baer, J]; see also, 4 Goldsmith and Leeds, New York Practice Guide, Real Estate § 36.09B [6] [b] [iii]; [c].)
It is clear that the proposed amendment to the proprietary lease constitutes an unreasonable restraint on alienation and diminishment of the property rights of the estate (Smukler v 12 Lofts Realty, 178 AD2d 125). Although the proposed amendment is not an absolute prohibition against the transfer of shares, it is an effective prohibition against such transfer and is unreasonable (see, Allen v Biltmore Tissue Corp., 2 NY2d 534, supra; Matter of Gusman, 178 AD2d 597). The fact that the board of directors of a cooperative is governed by the business judgment rule (see, Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530) is no defense on this motion as plaintiffs have convincingly alleged that defendant has acted in bad faith (see, Smukler v 12 Lofts Realty, 178 AD2d 125, supra).
Furthermore, while the proposed amendment does not specifically exempt the defendant from liability for its own negligence, it creates a situation where plaintiffs and others in plaintiffs’ position may be forced to withdraw claims or settle at a substantially reduced value in order to sell the rights in the stock and lease. The court notes that such rights to the apartment are extremely valuable, and may well be a major part of the assets of the seller.
Such a result additionally is clearly violative of the spirit, if not the letter, of General Obligations Law § 5-321 which provides: "Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property exempting the lessor from liability for damages for injuries to *438 person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable.”
There is no reasonable justification for requiring a shareholder-tenant to settle or drop his/her claims against the Coop prior to being permitted to sell the apartment. If such restrictions are permitted, any shareholder-tenant with a valid claim against a Co-op is prevented from selling the apartment and will be required to continue to pay monthly maintenance charges when they may no longer be able or desire to live there. The tenant’s only alternative would be to withdraw the claim thus compromising his or her right to legal redress, a result effectively denying the shareholder-tenant the opportunity to obtain legal redress. Such a result is contrary to the public policy of the State, which is to make the courts available to all for the resolution of disputes.
In the instant case, the board of directors’ desire for Mrs. Hoving’s estate to settle its litigation with the Co-op is an insufficient and unreasonable justification for such a restraint on alienation. The proposed restriction is therefore against public policy which favors facilitating the free transfer of property, and its purpose does not justify its exclusion from attack as an unreasonable restraint upon alienation.
Plaintiffs’ motion for a preliminary injunction should be granted. The standard requirements for such relief are satisfied in this case. (Grant Co. v Srogi, 52 NY2d 496 [1981].) Specifically, since the proposed amendment with regard to its provision concerning the settlement of claims is an unreasonable restraint on alienation and is therefore unlawful, a balancing of the equities and the likelihood of success on the merits are both in the plaintiffs’ favor. Furthermore, irreparable injury will be incurred by the plaintiffs if the vote is permitted and the proposed amendment is adopted. The plaintiffs will be forced to withdraw their lawsuit against the Co-op or settle their claims in an artificially created state of unequal bargaining power in exchange for permission to sell the apartment at the earliest possible date or they must hold on to the uninhabited apartment while pursuing both their earlier separate action and this action to have the restriction declared invalid. Both available options prejudice the plaintiffs’ legal rights and will cause them damages which are *439 indeterminable due to the current depressed and unpredictable nature of the real estate market.
Accordingly, the motion for preliminary injunction is granted. The parties are to confer with the court on the amount of the undertaking.
The temporary restraining order is to continue until an order is entered.