[690 NYS2d 220]

Carolina V. Dinicu, Appellant-Respondent, v Groff Studios Corp. et al., Respondents-Appellants.

First Department, May 18, 1999

APPEARANCES OF COUNSEL

*Lynn Armentrout* for appellant-respondent.

*Steven E. Rosenfeld* of counsel (*Law Office of Steven E. Rosenfeld, P. C.,* attorneys), for respondents-appellants.

## OPINION OF THE COURT

WALLACH, J.

After a nonjury trial where plaintiff produced conclusive evidence—and won a finding—of a substantial breach of her proprietary lease by defendant cooperative, she has come up empty as to any monetary recovery. While not always an anamoly, we reject such a result in this case, and remand the matter for a new trial limited to assessment of the damages incurred by her.

In 1979 plaintiff took a proprietary lease on a second-floor loft in the nine-story building owned by defendant cooperative corporation (Groff) at 151 West 28th Street, in Manhattan's Chelsea district. She had purchased this loft for combined use as a residence and dance studio under an offering plan which advised that while residential use was not permitted by the area's zoning designation (M1-6, light manufacturing), Groff would be seeking a variance to permit such use. The proprietary lease executed by the parties provided for plaintiff's occupancy in "combination residential and art related business or professional use".

Groff's application for a variance to permit combined residential and work quarters was denied by the Board of Standards and Appeals, resulting in a City injunction against further efforts at conversion for such use. In early 1981 the City Planning Commission amended the Zoning Resolution to extend into portions of the Chelsea district the authorization for conversion to joint living/working loft quarters. The Groff building remained outside the area for such "mixed" use, although the Resolution did provide for an amnesty for existing dwelling units such as plaintiff's, provided that an "alteration application to permit such use" was filed with the Department of Buildings (DOB) by September 1, 1981. Groff's application to this effect incorrectly listed plaintiff's use as exclusively residential, even though the floor plan clearly identified the area as including space for an office and studio. Plaintiff's expert witness, an architect, testified at trial that the reason was probably to include as much of the area as possible under the residential amnesty provision, so as to avoid the fee levied on

square footage being converted. The application was granted, and certain units in the building were legally authorized for conversion to residential use, while others would continue to be used for commercial and/or manufacturing purposes in accordance with the zoning of the area. None of the units, however, was designated for mixed (residential/commercial) use. In particular, the new certificate of occupancy identified plaintiff's unit as a residential apartment, without reference to the existence of the studio.

Plaintiff nonetheless continued to operate her premises as a studio devoted to Middle Eastern and North African dance until late 1983, when a couple moved into the unit just above. Objecting to the noise allegedly emanating from plaintiff's loft, they began circulating a petition to enforce the house rules against such disturbance. Plaintiff sought to satisfy the complainants by hanging heavy curtains and otherwise soundproofing her studio, all at her own expense.

The upstairs couple complained to the cooperative's board of directors that plaintiff's mixed use of her space was illegal. The board received opinions of counsel that—based upon the history of the building—plaintiff's mixed use could be ratified by amendment of the certificate of occupancy. This was, of course, not the solution the upstairs neighbors were seeking, and they pursued their complaint with the DOB, which issued a violation notice. Groff's response to this notice was to demand in writing that plaintiff cease and desist from using her premises as a dance studio.

Plaintiff conferred with Groff's architect and obtained from him an "altered building application" for presentation to the DOB, in order to amend the certificate of occupancy. However, such an application required the signature of the building owner, and rather than granting approval, Groff's board deferred the matter to the shareholders, who denied approval by a vote of 7 to 6. Even after counsel advised the board to be flexible in order to avoid litigation on which plaintiff appeared to have the high ground, the board invited the shareholders to repeat their vote, and the result was identical. Determined to force the issue, the upstairs tenants obtained a second violation notice from the DOB, which indicated that the only remedies would be to amend the certificate of occupancy or insist that plaintiff discontinue the illegal use forthwith.

With her primary occupation and artistic existence threatened, plaintiff had begun searching for a new building in the area, and found one that would cost about $800,000. The day

after the DOB's second violation notice was issued, plaintiff closed on her new building and made plans for its renovation, at a heavy financial commitment. Meanwhile, Groff continued to pressure plaintiff for further soundproofing, and a commitment to refrain from commercial use or sublease of her unit, even as plaintiff searched for a buyer. In July 1989, Groff's managing agent paid a fine to the Environmental Control Board and promised to eliminate the dance activity in plaintiff's unit. But before such a notice could be sent, plaintiff shut down her commercial activity, and vacated the residential portion of the premises shortly thereafter.

Plaintiff was unable to sublet the unit for more than two years, and even then only for a rental that was far below her monthly maintenance costs. After sustaining such losses for several years, plaintiff was finally able to sell the unit at a price that barely covered the mortgage she had given on the premises in order to finance the renovation of her new building. In the wake of these financial losses, plaintiff brought the instant lawsuit.

The complaint alleged, insofar as the issues have been framed on this appeal, that Groff had breached the proprietary lease in failing to deliver what was promised (first cause of action), that Groff had breached the covenant of quiet enjoyment, constructively evicting plaintiff (third cause of action), and that the Groff board of directors (including individual defendants Tone, Smith and Chard) had breached their fiduciary duty (sixth cause of action). The trial court dismissed the third and sixth causes of action. In upholding the first cause of action, the court nonetheless ruled that plaintiff suffered no net damages as a result of the breach.

■ We agree with the trial court that the decision of the individual board members to decline the altered building application was not actionable as against them. This was arguably a proper exercise of business judgment, thus insulating them from personal liability (*see, Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 537-538; *cf., Ludwig v 25 Plaza Tenants Corp.*, 184 AD2d 623). Corporate directors are not liable in tort for inducing breach of contract if they are reasonably acting in the best interest of the corporation. In the absence of allegations of individually tortious conduct, the directors of a cooperative corporation remain insulated from personal liability under the business judgment rule (*DeCastro v Bhokari*, 201 AD2d 382, 383).

■ Nevertheless, while it may be good business judgment to walk away from a contract, this is no defense to a breach of

contract claim. Thus, the business judgment rule does not protect Groff from liability. The trial court correctly upheld the first cause of action for breach of the lease. Groff failed to execute the application for an altered certificate of occupancy to reflect plaintiff's joint residential and commercial use of the premises, as specifically contemplated under the lease agreement (*see, Times Sq. Stores Corp. v Bernice Realty Co.*, 141 AD2d 536). The resultant defect in plaintiff's occupancy of the premises should have been easily correctable by Groff,* and certainly did not render the tenancy illegal (*see, Kosher Konvenience v Ferguson Realty Corp.*, 171 AD2d 650).

The trial court erred, however, on the question of measurable damages, comparing this situation to cases of no entitlement to damages where a plaintiff has been denied the use of property. Those cases (*see, e.g., Mountain View Coach Lines v Hartnett*, 99 Misc 2d 271, *affd* 69 AD2d 1020, *lv denied* 47 NY2d 710; *CTI Intl. v Lloyds Underwriters*, 735 F2d 679) involve the denial of the use of *personal* property, which was fungible, and therefore, replaceable without discernible loss. In contrast, real property is unique, and plaintiff adequately proved the unique importance of this loft to her livelihood and her clientele, in terms of convenience, locale, suitability, affordability and safety. In effect, the trial court made a finding, more commonly found in tort law, of *damnum absque injuria.* The equivalent concept in contract law is that damages for breach must not be speculative, and must be generally foreseeable, i.e., within the contemplation of the contracting parties. We do not find, on this record, that plaintiff's damages were too speculative to preclude any recovery (*Randall-Smith, Inc. v 43rd St. Estates Corp.*, 17 NY2d 99, 105-106; *Alexander's Dept. Stores v Ohrbach's, Inc.*, 269 App Div 321, 328-329). Her measure of damages should include her evidently futile soundproof renovation efforts (less depreciation), her costs in finding new suitable accommodation, and even some or all of her carrying costs on the loft until she was able to sublet it, depending on the evidence adduced. On remand, the court may entertain additional theories of recovery.

We recognize, of course, that this case presents some special, if not unique, features which made the ascertainment of dam-

---

* When the Department of Buildings issued its second violation, it stated: "Remedy—: *Amend the certificate of occupancy* to show dance studio or discontinue illegal use forthwith." (Emphasis added.) There was ample expert testimony (*see, Greasy Spoon v Jefferson Towers*, 75 NY2d 792) that such a change would involve an inexpensive ministerial application with a high probability of success. .

ages a difficult task. The critical events pertinent to liability occurred over the span of a decade with rising real estate values, particularly for the kind of loft accommodations involved here. Adding to the complexity is the fact that the predominant rise in value of plaintiff's premises was attributable to the residential portion (with which there was no interference by defendants) and little or no appreciation attributable to the dance studio portion of the leasehold. There is no significant proof that the studio operated at a profit at any time. Such obstacles do not create a preclusive bar to genuine losses arising from a breach of lease. The overarching principle was set forth in *Alexander's Dept. Stores v Ohrbach's, Inc.* (*supra*, at 328-329):

"Plaintiff in a case like this is not restricted to the ordinary rules for measuring damages or obliged to prove its losses with mathematical certainty or accuracy. * * *

"The law does not halt or surrender because the state of facts is novel 'and the ordinary methods of proving values are not available, but will resort to some practical means that will be just to both parties.' * * * 'It is recognized by the courts and by text writers and in digests that a wrongdoer * * * may not escape liability simply because there is * * * none of the ordinary standards for measuring the damages.'" (Citations omitted.)

■ We further disagree with the trial court on the dismissal of the third cause of action. A constructive eviction occurs when a tenant, though not physically barred from the area in question, is unable to use the area for the purpose intended (*Oresky v Azzouni*, 232 AD2d 463). Where eviction is constructive, breach of the covenant of quiet enjoyment does not require a physical ouster. Rather, a showing of abandonment of the premises under pressure is sufficient (*see, Herstein Co. v Columbia Pictures Corp.*, 4 NY2d 117, 121). Clearly, plaintiff was forced to abandon at least that portion of the demised premises used as a dance studio. Deprived of her living/working space, she had no choice but to vacate in order to survive, financially and artistically. The fact that her abandonment coincided with withdrawal to her newly purchased building does not negate at least a partial constructive eviction, thus interrupting her quiet enjoyment of the premises. Damages must also be considered in connection with the reinstated cause of action.

■ Finally, we cannot condone the imposition of costs (attorneys' fees and disbursements) to Groff, since plaintiff never defaulted on her leasehold obligations (*Mogulescu v 255*

*W. 98th St. Owners Corp.*, 135 AD2d 32). As the prevailing litigant here, *she* now becomes the party entitled to recover legal fees as an element of damages (Real Property Law § 234).

Accordingly, the judgment, Supreme Court, New York County (Leland DeGrasse, J.), entered September 4, 1997, which, dismissed plaintiff's complaint, should be reversed, on the law and the facts, with costs, the judgment vacated, the first and third causes of action of the complaint reinstated, the counterclaim for attorneys' fees and all other counterclaims dismissed, and the matter remanded for further proceedings before a different Justice to determine plaintiff's damages on the first and third causes of action. Appeal from order, same court and Justice, entered July 15, 1997, which, after a non-jury trial, found the corporate defendant in breach of its lease with plaintiff but awarded no damages, and severed defendants' counterclaim for attorneys' fees, should be dismissed, without costs, that order having been subsumed in the appeal from the judgment.

Motion seeking costs for share of joint appendix and other related relief denied.

ROSENBERGER, J. P., RUBIN and SAXE, JJ., concur.

Judgment, Supreme Court, New York County, entered September 4, 1997, reversed, on the law and the facts, with costs, the judgment vacated, the first and third causes of action of the complaint reinstated, the counterclaim for attorneys' fees and all other counterclaims dismissed, and the matter remanded for further proceedings before a different Justice to determine plaintiff's damages on the first and third causes of action. Appeal from order, same court, entered July 15, 1997, dismissed, without costs, as subsumed in the appeal from the judgment. Motion seeking costs for share of joint appendix and other related relief denied.