[712 NYS2d 1]

CHRISTOPHER A. MEASOM et al., Appellants, v GREENWICH AND PERRY STREET HOUSING CORPORATION, Respondent.

First Department, May 16, 2000

## APPEARANCES OF COUNSEL

*Richard J. Montelione* of counsel (*Montelione & Associates, P. C.,* attorneys), for appellants.

*Lauren J. Wachtler* of counsel (*Montclare & Wachtler,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, P. J.

In January 1988, plaintiffs Christopher A. Measom and Timothy J. Shaner purchased apartment J9, a studio in the cellar of a cooperatively owned, old-law tenement[1] located at 727 Greenwich Street in Manhattan. They moved into the apartment the following month pursuant to an assigned proprietary lease limiting the use of the apartment to a private dwelling, and resided there until September 1990. A Certificate of Occupancy (C/O) for the building, issued on August 23, 1928, indicates its use as a "Tenement House" consisting of a cellar and three stories. It does not, however, show whether the cellar contained a legal dwelling.

From October 1990 until the spring of 1994, plaintiffs, with the approval of the cooperative board, sublet the apartment to three different tenants. Beginning in early 1994, as alleged, plaintiffs began experiencing problems with the apartment, such as structural cracks in the walls and severe mice and bug infestation. According to plaintiffs, steam would seep through the floor and walls. In October 1994, in the midst of a continuing disagreement as to who was responsible for replacing the wood flooring, plaintiffs ceased paying rent and commenced this action against, among others, the cooperative corporation, the sole remaining defendant, alleging, *inter alia*, both fraud and breach of contract in the sale to them of the shares allocated to the basement apartment.

Plaintiffs also filed a petition to compel repairs to the apartment in the Housing Part of the Civil Court, New York County,

---

1. An old-law tenement is a "tenement existing before April [12, 1901], and recorded as such in the department [charged with enforcement of the law] before April [18, 1929]." (Multiple Dwelling Law § 4 [11].)

which proceeding was consolidated with this action. As a result of a prior determination, the propriety of which is not at issue here, all of plaintiffs' causes of action, with the exception of those against the cooperative corporation for breach of the proprietary lease based on the illegal status of their cellar apartment for use as a dwelling (second, fourth and sixth), have been dismissed. These claims, thereafter the subject of a non-jury trial, were dismissed by the Supreme Court, which concluded that plaintiffs failed in their burden of showing that the cellar apartment was not a legal dwelling. After dismissing the breach of lease claims, the Supreme Court transferred the petition claims to the Civil Court, Housing Part.

At trial, plaintiffs presented three witnesses: Measom, who testified as to the purchase of the apartment, his initial use of the apartment and subsequent subletting, which was not controverted; Edward Wentz, a licensed architect; and William Allcot, a supervising housing inspector of the Department of Housing Preservation and Development of the City of New York (HPD) for the past 26 years. Wentz visited the apartment and measured its dimensions, finding the height of the apartment to be five feet, four inches from the floor to the curb and two feet from the curb to the ceiling, dimensions which clearly indicated that the subject accommodation was a cellar apartment.[2] Wentz, opining that cellar dwelling occupancy was generally illegal, could not tell from the face of the building's C/O whether a unit in the cellar could be occupied as a dwelling.

Allcot testified about the existence of a pending violation, issued because of the placement of walls in the cellar without filing plans and without obtaining a new C/O. A search of agency records did not show the issuance of a subsequent C/O. According to HPD's records, a 1938 inspection of the cellar did not reveal the existence of an apartment. Subsequent inspections through 1976 disclosed an unoccupied cellar. During World War II, the City of New York, in an effort to cope with the housing shortage, issued permits according temporary legal status with respect to certain cellars. A temporary cellar permit issued at that time for the subject apartment was revoked in June 1958. Like Wentz, Allcot could not determine from the face of the C/O whether the subject apartment was legal according to the Multiple Dwelling Law or the New York City Administrative Code.

---

**2.** According to Wentz, a cellar was defined as a story that is more than 50% below "adjacent grade[,] which in the [City of New York] equals curb height." (*See*, Multiple Dwelling Law § 4 [37].)

The cooperative corporation called two witnesses, George Berger, a licensed engineer who, for over 30 years, was employed by the Department of Buildings and is currently an adjunct professor at New York University, specializing in zoning and building codes, and Frank Caminiti, a licensed architect. Berger, deemed an expert, testified that the C/O on file with the Department of Buildings listed a tenement from cellar to third floor and that a filed 1928 alteration application showed a cellar apartment. That being so, he testified, occupancy of the cellar as a dwelling for human habitation was legal, irrespective of any subsequent changes in the law. He further testified that, pursuant to the New York City Charter, only a directive of the Board of Standards and Appeals or court order could revoke or modify a C/O. Berger thus concluded that, absent evidence that the C/O was ever revoked or modified, the cellar could be used as a dwelling.

Caminiti largely corroborated Berger's testimony that the C/O clearly contemplated the existence of a cellar apartment. He also confirmed Berger's testimony that the legality of the cellar apartment would not have been changed even if it had become vacant at any time after 1928. Contradicting Allcot's testimony, he opined that the apartment was "grandfathered into the law." Relying primarily upon the testimony of the defendant's expert, Berger, that the existence of a C/O in 1928 meant that the apartment was legal, the IAS Court concluded that the apartment was legal. We reverse.

The trial court erred in deferring to the opinion of the cooperative corporation's expert as to the legality of the apartment. Expert testimony as to a legal conclusion is impermissible. (*See, People v Kirsh*, 176 AD2d 652, 653, *lv denied* 79 NY2d 949.) The apartment's legality presented a pure question of law involving statutory interpretation, which, in the first instance, is the responsibility of the court. (*Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd.*, 83 NY2d 315, 320; *Greater Johnstown School Dist. v Frontier Ins. Co.*, 252 AD2d 615.) In our view, as the controlling provisions of the Multiple Dwelling Law make clear, the trial court erred in finding that the cellar apartment was legal at the time of plaintiffs' purchase.

Contrary to the trial court's conclusion, the apartment in question was not legally habitable for residential purposes. In 1946, the Multiple Dwelling Law was amended to outlaw the occupancy of cellars and basements as living quarters. (L 1946, ch 950.) The general rule, as embodied in Multiple Dwelling

Law § 300 (6) (formerly § 300 [5]), reads, in pertinent part, "No room in a cellar or basement shall be occupied for living purposes unless the department shall issue a written permit for such occupancy after all the applicable provisions of law have been complied with."

There is no dispute that the apartment in question is located in a cellar. Plaintiffs' expert, Wentz, testified, without contradiction, that he measured the apartment's dimensions as five feet, four inches from floor to curb and two feet from curb to ceiling. Multiple Dwelling Law § 4 (37) defines a cellar as "an enclosed space having more than one-half of its height below the curb level." Here, more than one half of the basement apartment's height was below the curb. Wentz's testimony also reveals that it would be nearly impossible, if not counterproductive, to alter the apartment to avoid its classification as a cellar.

Nor is there any dispute that no "written permit for [cellar] occupancy [was issued] after all the applicable provisions of law have been complied with." (Multiple Dwelling Law § 300 [6].) In that regard, Multiple Dwelling Law § 34 (6), insofar as is relevant, provides that "[a]n apartment in a cellar or basement of any multiple dwelling may be used for living purposes provided all of the following conditions [primarily regarding adequate light and air] are complied with." Along similar lines, Multiple Dwelling Law § 216 provides, in pertinent part, that "[n]o room in the basement or cellar of any tenement shall be occupied for living purposes unless there is a written permit therefor as provided in subdivision five of section three hundred and it either is part of an apartment which complies with the conditions of subdivision six of section thirty-four or complies with the following conditions [also dealing primarily with adequate light and air]."[3] The cooperative corporation does not assert, nor is there anything in the record which suggests, that the apartment satisfied the conditions imposed by these statutes.

A review of the legislative history of the Multiple Dwelling Law reveals that in 1953, in recognition of the significant number of families living in noncomplying cellar apartments, the Legislature added subdivision (5) of section 216 to permit, under certain circumstances, the continued occupancy, until 1955, of such apartments in tenements erected prior to April

---

**3.** Administrative Code §§ 27-2082 and 27-2086 (a) largely track the language of Multiple Dwelling Law § 34 (6) and § 216 (2) and (3); *see also,* Multiple Dwelling Law § 300 (6).

18, 1929. (L 1953, ch 574; *see,* Governor's Approval Mem, 1953 NY Legis Ann, at 348-349, reprinted in McKinney's Cons Laws of NY, Book 35A, Multiple Dwelling Law § 216, at 253 [1974 ed].) In 1955, the Legislature added subdivision (5) to Multiple Dwelling Law § 34 to extend this relief until 1957, and to include cellars of converted dwellings and dwellings erected after April 18, 1929. (L 1955, ch 772.) In view of "the continuing severe shortage of housing, especially for lower middle income families, [which made] impracticable the immediate strict enforcement of the prohibition with respect to the thousands of basements and cellars still occupied" (Joint Legis Comm on Hous & Multiple Dwellings, Bill Jacket, L 1959, ch 805, reprinted in McKinney's Cons Law of NY, Book 35A, Multiple Dwelling Law § 34, Notes of Commission—1959 Amendment, at 72-73 [1974 ed]), a series of amendments to Multiple Dwelling Law § 34 (5)[4] and § 216 (5) were enacted to extend the period of legal occupancy of cellar apartments, ultimately to July 1, 1967 (L 1965, ch 488).

There is no provision in these enactments grandfathering preexisting cellar apartments. Both sections are applicable "notwithstanding" any other provision in the statute to the contrary. (*See,* Multiple Dwelling Law § 34 [5]; § 216 [5].) Thus, the enactment of these two separate sections bespeaks a clear legislative intent to ban the occupancy, in any multiple dwelling, of noncomplying cellars as dwellings after July 1, 1967. Thus, except for compliance with the requirements of Multiple Dwelling Law § 34 (6) and/or § 216 (5), which is not the case here, occupancy of cellar apartments is, at the current time, illegal in New York City.

While there is evidence that a temporary occupancy permit was issued during World War II for the subject apartment, it was revoked by letter dated June 5, 1958 from the Department of Buildings because "the original tenant no longer occupies the [cellar] apartment". The letter of revocation noted that "[a]mended Section No. 216 Subdivision 5 [of the Multiple Dwelling Law] * * * states that any cellar apartment that is or becomes vacant on or after June 1, 1955 shall not be reoc-

---

4. Multiple Dwelling Law § 34 (5) provides: "Notwithstanding any provisions of this section or of subdivision five of section [300], an apartment or room in a cellar which was occupied for living purposes at any time on or after October first, nineteen hundred fifty-two may thereafter continue to be occupied for such purposes until July first, nineteen hundred sixty-seven, in accordance with the conditions imposed by subdivision five of section two hundred sixteen."

cupied." As far as this record discloses, this determination was never appealed.

In response to plaintiffs' contention that the revocation of the temporary occupancy permit shows the illegality of the cellar apartment for occupancy as a dwelling, the cooperative corporation essentially argues that the revocation has no effect on the C/O which, when issued, permitted occupancy of the cellar apartment. While a temporary amended C/O may not normally affect the last issued permanent C/O with respect to the uses that were not the subject of the temporary C/O (see, Siegler, Cooperative and Condominiums, *Certificates of Occupancy*, NYLJ, Jan. 4, 1995, at 3, col 1), where there is a use that was the subject of the temporary C/O—here, occupancy of the cellar apartment—and the temporary C/O was subsequently revoked, that use is no longer a permissible one, irrespective of the original C/O. Thus, the revocation of the "temporary cellar occupancy [c]ertificate" was effective to prohibit occupancy even if such occupancy were permitted under the original C/O. In any event, pursuant to Multiple Dwelling Law § 34 (5) and § 216 (5), noncomplying cellar apartments could, under no circumstances, be legally occupied after July 1, 1967. Therefore, the subject apartment, as it existed at the time plaintiffs purchased it, could not be occupied as a dwelling (see also, 24 RCNY 131.07), and the cooperative corporation is in breach of the lease.

In addition to being in violation of the Multiple Dwelling Law, the subject apartment also fails to conform to several provisions of the New York City Administrative Code. Section 27-2086 (a), insofar as relevant to the subject apartment, states that no cellar shall be occupied as a dwelling unless it complies with either the specified provisions therein regarding adequate height, space and ventilation or the provisions of section 27-2082. The subject apartment does not comply with these sections.

Finally, the cooperative corporation contends that this appeal has been rendered moot by a written determination in 1998 by an Administrative Law Judge (ALJ) of the Department of Buildings dismissing a violation issued to the cooperative corporation for allowing occupancy of an "illegal cellar." Initially, we note, the ALJ's decision is not part of this record. In any event, it does not appear that plaintiffs were parties to that proceeding. Moreover, no showing is made as to how this determination renders this appeal moot.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered on or about October 29,

1998, which, after a nonjury trial, dismissed the complaint's remaining causes of action alleging a breach of the proprietary lease and severed and transferred the consolidated proceeding under Civil Court Index No. L&T 119609/94 to the Civil Court for resolution, should be reversed, on the law, without costs and disbursements, judgment awarded to plaintiffs on said causes of action, and the matter remanded to Supreme Court, New York County, for a trial on damages for breach of the lease and for disposition of the consolidated Civil Court action.

MAZZARELLI, WALLACH, RUBIN and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered on or about October 29, 1998, reversed, on the law, without costs and disbursements, judgment awarded to plaintiffs on the remaining causes of action alleging a breach of the proprietary lease, and the matter remanded to Supreme Court, New York County, for a trial on damages for breach of the lease and for disposition of the consolidated Civil Court action.