OPINION OF THE COURT
Per Curiam.
Judgment entered October 29, 2002 modified by deleting the provision thereof which directed the payment of certain interest measured from January 8, 1988 and substituting therefor a provision that such interest run from October 1,1990; as modified, judgment affirmed, with $25 costs, and the matter is remitted to Civil Court for entry of an appropriate amended judgment.
The action, vigorously litigated since its commencement in Supreme Court in October 1994, stems from the plaintiffs’ purchase of a studio apartment in the cellar of a cooperatively owned residential building located at 727 Greenwich Street in Manhattan. The lawsuit has spawned several prior appeals to the Appellate Division, the most recent of which resulted in a determination that the defendant cooperative corporation was in breach of the parties’ proprietary lease because the cellar apartment, “as it existed at the time plaintiffs purchased it [in January 1988], could not be occupied as a dwelling” and is not “legally habitable for residential purposes” (Measom v Greenwich & Perry St. Hous. Corp., 268 AD2d 156, 159, 162 [2000], lv dismissed 99 NY2d 608 [2003]). The Appellate Division thus awarded plaintiffs a liability judgment on their causes of action for breach of the proprietary lease and remanded the matter “for a trial on damages for breach of the lease.” (Measom, 268 AD2d at 163.) After the case was transferred to Civil Court pur *52 suant to CPLR 325 (d), the damages issue was tried over seven court days, with the court ultimately awarding plaintiffs lease damages of $79,682.60, a sum largely representing “[a] refund of their purchase price for the shares to the cooperative unit.” On defendant’s appeal, we sustain the formula of damages applied by the trial court and, aside from a minor modification relating to the court’s calculation of prejudgment interest, affirm the damage award.
As a threshold matter, we note that the bona tides of defendant’s properly pleaded statute of limitations defense — the subject of a nonfinal, Supreme Court order unappealed by defendant — is properly raised by defendant in the context of its present appeal from the final judgment (see CPLR 5501 [a] [1]; Burke v Crosson, 85 NY2d 10, 15-16 [1995]). On the merits, however, we find the defendant’s statute of limitations argument to be unavailing. Inasmuch as defendant’s obligation to provide a legal, habitable apartment was a continuing one, and because its breach of that obligation constituted a violation of the law (Measom, 268 AD2d at 162), the plaintiffs’ breach of lease claims are “not referable exclusively to the day the original wrong was committed” (1050 Tenants Corp. v Lapidus, 289 AD2d 145, 146 [2001]). Instead, “a cause of action accrue[d] •anew every day” for each continuation of the wrong (id.), and thus plaintiffs’ claims for damages accruing less than four years before the commencement of the action are not time-barred (see UCC 2-725 [1]; Stalis v Sugar Creek Stores, 295 AD2d 939, 940-941 [2002]; cf. Measom v Greenwich & Perry St. Hous. Corp., 227 AD2d 312 [1996] [affirming dismissal of plaintiffs’ claims for fraudulent inducement with respect to the November 1987 contract of sale for the cooperative apartment as time-barred under four-year UCC statute of limitations]).
Turning to the core issue of damages, we find no legal ground to disturb the court’s aggregate award of $79,682.60 for defendant’s demonstrated breach of lease. We initially recognize, as both parties readily acknowledge, that this case presents some special features which make the ascertainment of damages a difficult task. Here, as in Dinicu v Groff Studios Corp. (257 AD2d 218, 224 [1999]), “[t]he critical events pertinent to liability occurred over the span of a decade with rising real estate values” and, as the trial court observed below, a calculation of damages based upon a diminution of value of the plaintiffs’ long-term (27-year, renewable) leasehold interest is both “indirect[ ]” and “speculative.” However, “[s]uch *53 obstacles do not create a preclusive bar to genuine losses arising from a breach of lease” (Dinicu at 224), and do not justify the result apparently endorsed by our dissenting colleague in having plaintiffs “come up empty as to any monetary recovery” (id. at 220) despite what has now been authoritatively determined to be the defendant’s conveyance of an illegal, uninhabitable apartment.
“Plaintiff[s] in a case like this [are] not restricted to the ordinary rules for measuring damages or obliged to prove [their] losses with mathematical certainty or accuracy . . . The law does not halt or surrender because the state of facts is novel and the ordinary methods of proving values are not available, but will resort to some practical means that will be just to both parties ... It is recognized by the courts and by text writers and in digests that a wrongdoer . . . may not escape liability simply because there is . . . none of the ordinary standards for measuring the damages.” (Dinicu at 224, quoting Alexander’s Dept. Stores v Ohrbach’s, Inc., 269 App Div 321, 328-329 [1945] [internal quotation marks and citations omitted].)
Fashioning a “practical” remedy to the problems presented in fixing damages herein, the trial court was warranted in predicating its damage award upon the initial purchase price of the cooperative apartment, an amount which, we note, was less than the amount sought by plaintiffs as damages under their alternative real estate valuation formula. While it is true that the purchase price of the shares allocated to the apartment was tendered to the cooperative sponsors — who were previously let out of the case — there is nothing “unfair” (dissenting op at 55) in using the apartment’s purchase price as a yardstick in determining the amount of damages recoverable against the cooperative corporation for its established breach of the proprietary lease. This conclusion is borne out by an examination of the nature of a tenant shareholder’s ownership interest in a cooperative apartment, an interest which has fairly been described as “sui generis in modern property law” (Matter of Carmer, 71 NY2d 781, 784 [1988]). This “paradoxical interest” (id.) combines the ownership of shares of stock allocated to a cooperative apartment — which represent “not an ordinary investment security, but in substance a major capital expenditure securing a long-term living space” (id. at 785) — with the right to occupy the apartment, a right derived from an appurtenant “propri *54 etary” lease. Although the proper characterization of a proprietary lease is a matter of some academic debate (see Note, Legal Characterization of the Individual’s Interest in a Cooperative Apartment: Realty or Personalty?, 73 Colum L Rev 250, 255-256 [1973]), it is at least arguable that such a lease “ ‘gives rights equivalent in economic benefit to outright ownership’ of the property which the lease describes . . . [and to that extent] necessarily place [s] the cooperator in a more favored position than a mere lessee.” (Id.) Irrespective of whether a proprietary lease actually transfers rights akin to an ownership interest in the cooperative apartment, what is of paramount importance to our inquiry is the law’s long-standing recognition that “[t]he leasehold and the shareholding are inseparable.” (Matter of State Tax Commn. v Shor, 43 NY2d 151, 154 [1977].) In light of this analytical framework, in which the corporate and leasehold aspects of the purchase of a cooperative apartment are not properly “viewed in isolation from one another” (Chemical Bank v 635 Park Ave. Corp., 155 Misc 2d 433, 435 [1992]), and since the illegal status of the cooperative apartment conveyed by defendant effectively eviscerated the value of plaintiffs’ equity investment, the damages theory urged by defendant— limiting plaintiffs’ recovery to losses attributable to a violation of the statutory warranty of habitability — is both unrealistic and overly restrictive. We modify the judgment only to the extent of awarding plaintiffs prejudgment interest measured from October 1, 1990, so as to comport with the applicable four-year limitations period.
Finally, we agree that plaintiffs achieved prevailing party status so as to warrant their recovery of legal fees as an element of damages (see Real Property Law § 234). Considering, among other factors, the professional standing of plaintiffs’ counsel, the favorable results ultimately achieved, and the protracted nature of the litigation, the fee award (roughly $128,000), though substantial, is supported by the record.