ROBERT WILLMSCHEN *et al.*, Plaintiffs-Appellants, v. TRINITY LAKES IMPROVEMENT ASSOCIATION *et al.*, Defendants-Appellees.

Second District No. 2—05—0343

Opinion filed December 27, 2005.

Thomas R. Mulroy III, John A. Leja, Carlin R. Metzger, and Jaime L. Hochhausen, all of McGuire Woods, L.L.P., of Chicago, for appellants.

Tracy A. Mitchell, Pamela J. Park, and Richard W. Hillsberg, all of Kovitz, Shifrin & Nesbit, of Buffalo Grove, for appellees.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, Robert Willmschen, Ronald Cullum, Peter Hlepas, Mark Kaschube, and James Campise, are homeowners in the Trinity Lakes Estates subdivision in Oakbrook (Trinity Lakes). They filed a four-count complaint in the circuit court of Du Page County against defendants, the Trinity Lakes Improvement Association (Association) and its board of directors (Board), alleging that defendants breached certain covenants by failing to properly maintain two lakes, portions of which were part of Trinity Lakes' common areas. Plaintiffs, whose homes bordered the lakes, further alleged that the lakes were both a private and a public nuisance. Defendants filed a combined motion pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 2004)) to dismiss plaintiffs' second amended complaint. Plaintiffs appeal from the court's order granting the motion and dismissing the complaint with prejudice. We affirm in part, reverse in part, and remand for further proceedings.

According to plaintiffs' second amended complaint, Trinity Lakes was developed in the 1970s and consists of about 200 single-family properties. Trinity Lakes is on the shores of two lakes known as Upper and Lower Mayslake. In connection with the development of the subdivision, the lakes were excavated to remove sediment and vegetation, and they serve to prevent flooding and soil erosion by acting as water drainage, detention, and retention facilities. Trinity Lakes' "Declaration of Covenants, Conditions, and Restrictions" (declaration) identifies portions of the lakes as common areas. The declaration further provides that the Association is responsible for maintenance of the common areas. However, according to plaintiffs, the condition of the lakes deteriorated dramatically since the Association was established. The lakes had come to be filled with sediment and noxious vegetation and algae. According to the complaint, the lakes were an eyesore, produced foul odors, and were hazardous to those who might intentionally or accidentally enter the water.

A few years before the lawsuit was filed, the Board, as then constituted, formed a committee to investigate the condition of the lakes and retained an environmental firm to study the problem. The firm compiled a written "vegetation management plan" (VMP). The VMP suggested that the introduction of nutrients into the lakes due to runoff from construction sites and fertilized lawns was the major factor contributing to the overgrowth of vegetation in the lakes. The

VMP proposed remedial measures including dredging the lakes to increase their depth and to remove nutrient-rich sediments, removing undesirable vegetation and replacing it with more appropriate aquatic plants, reducing nutrient levels in the water, and monitoring compliance with appropriate erosion control measures. However, the Association did not undertake these measures, and plaintiffs initiated this litigation.

Counts I and II alleged that the Association (count I) and the Board (count II) had breached covenants pertaining to maintenance of the lakes. In both counts, plaintiffs sought (1) orders requiring defendants to comply with the maintenance provisions of the declaration and (2) declaratory judgments clarifying defendants' obligations under those provisions. Counts III and IV, both of which were directed against the Association, asserted theories of private and public nuisance, respectively. As noted, defendants filed a combined motion to dismiss under sections 2—615 and 2—619 of the Code. Under section 2—619, defendants sought dismissal of counts I, II, and III, on the basis that plaintiffs had suffered no special injury distinct from the injury to other homeowners and therefore lacked standing to sue. Defendants similarly argued that plaintiffs lacked standing as to count IV, alleging a public nuisance, because they had suffered no special injury different from that suffered by the public. Under section 2—615, defendants moved to dismiss counts I, II, and III, for failure to state a cause of action. Defendants contended that those counts were defeated by the business judgment rule. As to count III—the private nuisance count—defendants additionally contended that the claim was legally insufficient because plaintiffs had failed to allege that defendants were responsible for creating the vegetation problem in the lakes. Defendants also moved to strike the prayers for declaratory relief in counts I and II. After the trial court granted the motion to dismiss, plaintiffs filed a timely notice of appeal.

Initially, we review the principles governing motions to dismiss under sections 2—615 and 2—619 of the Code. A section 2—615 motion attacks the legal sufficiency of the complaint. *Suburban 1, Inc. v. GHS Mortgage, LLC*, 358 Ill. App. 3d 769, 772 (2005). In reviewing the sufficiency of the complaint, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences that can be drawn from those facts. *Suburban 1*, 358 Ill. App. 3d at 772. A section 2—619 motion admits the legal sufficiency of the complaint, but raises defects, defenses, or other affirmative matter appearing on the face of the complaint or established by external submissions which defeats the action. *Lyons v. Ryan*, 324 Ill. App. 3d 1094, 1100-01 (2001). Lack of standing may be raised under section 2—619. *Lyons*, 324 Ill.

App. 3d at 1101. Generally, a dismissal under either section is reviewed *de novo. Lyons*, 324 Ill. App. 3d at 1101.

■ The first issue is whether plaintiffs' breach of covenant and private nuisance claims were properly dismissed pursuant to section 2—615 of the Code because the business judgment rule defeats those claims. In sum, defendants' argument is that awarding the relief requested by plaintiffs would interfere with the Board's decision as to how to handle the problem with the lakes. Defendants argue that because the decision was made in the exercise of the Board's sound business judgment, the courts should not interfere with it. As defendants correctly note, the business judgment rule is a presumption that officers and directors of a corporation make decisions on an informed basis, in good faith, and with the best interests of the corporation at heart. *Ferris Elevator Co. v. Neffco, Inc.*, 285 Ill. App. 3d 350, 354 (1996). The principal cases cited by defendants illustrate that the business judgment rule comes into play where mismanagement is the gravamen of the cause of action. See *Ferris Elevator Co.*, 285 Ill. App. 3d at 354 (in shareholder's derivative suit against directors who surrendered corporation's license to operate as a grain dealer and a grain warehouse, business judgment rule created presumption that decision was an informed one and shareholder-plaintiff alleging injury to the corporation was required to put forth evidence to the contrary); *Miller v. Thomas*, 275 Ill. App. 3d 779, 787-89 (1995) (business judgment rule applied to board of director's refusal of shareholder demand to bring a lawsuit against certain present and former directors of the corporation); *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1018 (1993) (business judgment rule applied in lawsuit by liquidator of insolvent insurance company against certain directors of the company); *Adams v. Meyers*, 250 Ill. App. 3d 477, 485 (1993) (because business judgment rule limited judicial review of decisions of a condominium association's board of managers, plaintiff unit owners had "tangible and substantial legal interests in being represented by a duly elected board" and thus had standing to challenge election procedures). Thus, had plaintiffs brought suit under a theory that the Board's inattention to the condition of the lakes was injurious to the interests of the Association, the business judgment rule certainly would apply.

In *Ferris, Miller, Stamp,* and *Adams*, relief was sought for mismanagement *per se*; none of the cases involved an independent cause of action against the corporation under a contract or tort theory or otherwise. While courts ordinarily will not interfere with management decisions on the basis of their wisdom or lack thereof, the business judgment rule does not afford a corporation *carte blanche* to

behave unlawfully. Hence, we agree with the observation of a court from a sister state that "it may be good business judgment to walk away from a contract, [but] this is no defense to a breach of contract claim." *Dinicu v. Groff Studios Corp.*, 257 A.D.2d 218, 222-23, 690 N.Y.S.2d 220, 223 (1999). By the same reasoning, though it may also be good business judgment to ignore a public or private nuisance, this is no defense to an action seeking an otherwise proper remedy.

■ Counts I and III of plaintiffs' complaint seek recovery from the Association, not the Board. Count I essentially sounds in contract, while count III asserts a private nuisance theory. For the reasons set forth above, the business judgment rule does not dictate dismissal of these counts. Count II of the complaint, however, sought relief from the Board for breach of covenant. Under the common law, a corporation is a legal entity that exists separate and distinct from its shareholders, officers, and directors, who are not, as a general rule, liable for the corporation's obligations. *In re Estate of Wallen*, 262 Ill. App. 3d 61, 68 (1994). Section 108.70 of the General Not For Profit Corporation Act of 1986 (805 ILCS 105/108.70 (West 2002)) provides that an officer or director of a not-for-profit corporation exempt from taxation under 501(c) of the United States Internal Revenue Code (26 U.S.C. § 501(c) (1994)) is immune from liability for acts done in the "exercise of judgment or discretion in connection with [his] duties or responsibilities," except for acts involving "willful or wanton conduct." Plaintiffs stress that count II does not seek to hold individual board members liable and that the citation in plaintiffs' brief to section 108.70 was included only to show this court that, if plaintiffs had wished to hold the board members individually liable, they would have had a basis for doing so. However, plaintiffs fail to explain how the board of directors of a corporation, as distinct from the corporation itself, may be held collectively liable. Plaintiffs cite no Illinois authority to support their claim, nor do we know of any. Looking to foreign authority, we consider the Ohio Court of Appeals to have a well-reasoned position on the issue:

> "[The] belief that [a] board [of directors] is a separate entity capable of being sued is a misconception of what a board of directors is and how it functions within the corporate structure. A board of directors is incapable of owning property and cannot sue in its own name. Instead, a board of directors is the collection of individuals with the ultimate responsibility of making decisions on behalf of the corporation. [Citation.] ***
>
> *** A director is responsible for corporate torts only if he or she participates in the tortious conduct. [Citation.] Thus, some directors may be individually liable for the corporation's tortious

conduct while others are not liable for that same tortious conduct. In other words, a director's liability for any particular corporate action must be determined on an individual rather than a collective basis.

As a practical matter, it would be nonsensical to hold a board of directors liable as a collective entity. A board of directors may not own property in its own name. Thus, any judgment against it could not be recovered from the collective group. Furthermore, a judgment against the collective entity cannot apply to the individual, as the individuals are liable only if they participated in the tortious conduct. Thus, such a suit would be, for all practical purposes, pointless." *Flarey v. Youngstown Osteopathic Hospital*, 151 Ohio App. 3d 92, 95-96, 783 N.E.2d 582, 585 (2002). See also *Foskey v. Vidalia City School*, 258 Ga. App. 298, 301, 574 S.E.2d 367, 370 (2002) (municipal board of education, unlike the school district it manages, is not a body corporate and does not have the capacity to sue or be sued). Plaintiffs have not convinced us that Illinois law does or should permit a plaintiff to sue a corporation's board of directors as a distinct and separate legal entity. Accordingly, count II was properly dismissed for failure to state a cause of action regardless of whether the business judgment rule applies.

Defendants also argue that the complaint was properly dismissed in its entirety because a showing of a special injury—one distinct from the injury suffered by other Trinity Lakes property owners—is necessary to have standing to maintain either a direct action against the Association or an action based on a claim of nuisance. In support of their argument, defendants rely principally on *Spillyards v. Abboud*, 278 Ill. App. 3d 663 (1996), which noted that to have standing to sue individually, rather than derivatively on behalf of a corporation, the plaintiff must allege a special injury, *e.g.*, either an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder, such as the right to vote or to assert majority control, which exists independently of any right of the corporation. *Spillyards*, 278 Ill. App. 3d at 670-71. The *Spillyards* rule applies to actions against homeowners' associations. *Goldberg v. Michael*, 328 Ill. App. 3d 593, 599 (2002). In *Goldberg*, the plaintiffs, members of a homeowners' association, sued the individual directors of the association's board. The plaintiffs sued both in their individual capacities and on behalf of the association. They alleged that the directors seized a corporate opportunity by purchasing for themselves foreclosed property within the association. This court held that the plaintiffs were not entitled to sue on behalf of the corporation because the board had voted not to proceed with a suit. We further

held that the plaintiffs had no standing to pursue individual claims because they failed to allege direct harm to themselves. Though the plaintiffs alleged that the misconduct of the directors in purchasing the property for themselves caused the plaintiffs' assessments to rise, we considered this an injury to the corporation itself that led to only indirect harm to the plaintiffs. *Goldberg*, 328 Ill. App. 3d at 599.

■ Here, by contrast, plaintiffs have alleged direct harm to themselves. They aver that of the 200 properties in the Association, only 19 properties "border, or have line of sight to, the [l]akes." Plaintiffs own homes on lots "directly adjacent" to the lakes. Plaintiffs therefore receive the brunt of the unpleasant smell and appearance of the lakes. Defendants claim that the Association's implementation of the VMP "would cause equal benefit \*\*\* to all homeowners." We disagree. If, as plaintiffs allege, they are suffering uniquely because of their unique position adjacent to the lakes, then it follows that they stand to gain uniquely from the VMP. Plaintiffs have alleged sufficient *individual* harm to maintain this lawsuit.

The next issue is whether plaintiffs have failed to state a cause of action under a private nuisance theory because the complaint shows that defendants were not responsible for the condition of the lakes. Defendants argue that the VMP, which is attached to plaintiffs' complaint, shows that the growth of vegetation in the lakes was the result of introduction of sediment and nutrients into the lakes caused by runoff from construction sites and fertilized lawns for which they were not responsible.

■ A private nuisance is a substantial invasion of another's interest in the use and enjoyment of his or her land. *Schiller v. Mitchell*, 357 Ill. App. 3d 435, 441 (2005). The invasion must be either intentional or negligent, and unreasonable. *Schiller*, 357 Ill. App. 3d at 441. Although defendants contend that they were not responsible for the vegetation growth in the lakes, section 839 of the Restatement (Second) of Torts provides:

> "A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and
>
> (a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and
>
> (b) he knows or should know that it exists without the consent of those affected by it, and
>
> (c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or protect the affected persons against it." Restatement (Second) of Torts § 839, at 161 (1979).

To the extent the vegetation in the lakes is the result of fertilizer

runoff and runoff from construction sites, it is an artificial condition rather than a natural one. See Restatement (Second) of Torts § 840, Comment *a*, at 166 (1979) ("The term ['natural condition'] does not comprehend conditions that would not have arisen but for the effect of human activity even though the conditions immediately resulting from the activity were harmless in themselves and the harmful condition has arisen through the subsequent operation of natural forces"). In count III, plaintiffs have alleged a failure "to maintain or remediate over 20 years" despite "known safety concerns and persistent odors." For purposes of defendants' motion to dismiss, the allegation must be taken as true, and it establishes that the Association knew of the nuisance or unreasonable risk of nuisance, had a reasonable opportunity to take steps to abate the condition, and failed to do so. Moreover, it is a reasonable inference from plaintiffs' allegations that lakefront homeowners had not consented to the condition, which allegedly arose or worsened during the period after the Association became responsible for maintenance of common areas. See Restatement (Second) of Torts § 839, Comment *j*, at 164 (1979) ("When the artificial condition is created while the possessor is in possession of the land, he cannot ordinarily assume that the condition or any nuisance resulting from it exists with the consent of others who are affected by it"). Accordingly, count III states a cause of action.

■ Count IV, claiming a public nuisance, alleges that because portions of the lakes border forest preserve property, the general public is subjected to "the same odors and safety concerns experienced by Plaintiffs." Defendants contend that plaintiffs lack standing to sue, because they have not suffered a special injury different from the public. The argument is without merit. It is true that standing in a public nuisance action depends on the existence of a special injury (*Young v. Bryco Arms*, 213 Ill. 2d 433, 441-42 (2004)). However, according to the Restatement:

> "When the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one. In this case the harm suffered by the plaintiff is of a different kind and he can maintain an action not only on the basis of the private nuisance itself, but also, if he chooses to do so, on the basis of the particular harm from the public nuisance." Restatement (Second) of Torts § 821C, Comment *e*, at 96 (1979).

Accordingly, plaintiffs have standing to sue under a public nuisance theory.

■ We note that counts I and II of plaintiffs' complaint seek specific performance of the Association and Board's contractual obligations to

maintain the lakes as well as a declaratory judgment "clarify[ing] the obligations of the Association with regard to maintenance." In dismissing the complaint, the trial court reasoned that the request for clarification implied that the obligations were too indefinite to permit specific performance. Plaintiffs contend that the trial court misconstrued the complaint. They note that there is no dispute between the parties that the declaration "contains the essential terms necessary to be enforceable." Plaintiffs assert that "the complaint is merely seeking a judicial determination of the rights and obligations of the parties and the enforcement of the Declaration's terms."

The allegations of a complaint should be liberally construed in favor of the plaintiff. *Bea v. Bethany Home, Inc.*, 333 Ill. App. 3d 410, 413 (2002). The trial court placed too much weight on the term "clarify," for aside from it there is simply no indication in the complaint that plaintiffs consider the terms of the declaration indefinite in any manner. Rather, by the word "clarify," plaintiffs evidently are asking the trial court to "state," "declare," or "affirm" what they believe to be the clear meaning of the declaration, not to construe language whose meaning they cannot discern. Thus, we agree with plaintiffs that dismissal cannot be sustained on this basis.

■ Finally, defendants contend that the trial court properly dismissed counts I and II because both counts combined claims for injunctive and declaratory relief. The argument is meritless. Under Supreme Court Rule 135 (134 Ill. 2d R. 135), the requests for equitable and declaratory relief are considered part of a single cause of action and need not be pleaded in separate counts. *Board of Education v. Sanders*, 150 Ill. App. 3d 755, 761 (1986).

For the foregoing reasons, we affirm the dismissal of count II, reverse the dismissal of counts I, III, and IV, and remand to the circuit court of Du Page County for further proceedings.

Affirmed in part, reversed in part, and remanded.

GROMETER and CALLUM, JJ., concur.