20188. CRAVEY, Insurance Commissioner, *v.* SOUTHEASTERN UNDERWRITERS ASSOCIATION.

20189. CRAVEY, Insurance Commissioner, *v.* NATIONAL AUTOMOBILE UNDERWRITERS ASSOCIATION *et al.*

20190. CRAVEY, Insurance Commissioner, *v.* MUTUAL INSURANCE RATING BUREAU.

ARGUED SEPTEMBER 10, 1958—DECIDED OCTOBER 10, 1958.

*Eugene Cook, Attorney-General, John L. York, F. Douglas King, Assistant Attorneys-General, John Tye Ferguson, Deputy Assistant Attorney-General,* for plaintiff in error.

*Henry B. Troutman, Jr., Troutman, Sams, Schroder & Lockerman,* for Southeastern Underwriters Association and National Automobile Underwriters Association *et al.*

*Gambrell, Harlan, Russell, Moye & Richardson, James C. Hill, E. Smythe Gambrell, Edward W. Killorin,* for Mutual Insurance Rating Bureau.

ALMAND, Justice. These three writs of error assign error on the orders of the trial court in overruling the general demurrers and in striking a portion of the answer of the plaintiff in error, Zack D. Cravey, Insurance Commissioner of Georgia, to the separate petitions of the defendants in error filed in the Fulton Superior Court, whereby the petitioners sought to enjoin the Commissioner from enforcing a rate suspension order issued by him. Involving substantially the same controlling issues, they will be considered together.

In substance the three petitioners allege that they were un-

incorporated associations of insurance companies engaged in case No. 20188 in the business of fire and allied lines of insurance; in case No. 20189, in the business of automobile fire and theft insurance; and in case No. 20190, in the business of private passenger automobile personal injury and property damage liability insurance. The petitioners further allege: that they operate as rating bureaus, licensed by the defendant as Insurance Commissioner of Georgia, in case No. 20188 under the Georgia Rate Regulatory Act of 1947 for Fire, Marine and Inland Marine Insurance (Ga. L. 1947, p. 1523; Code, Ann., Ch. 56-21); and in cases Nos. 20189 and 20190 under the Georgia Rate Regulatory Act of 1947 for Casualty, Fidelity and Motor Vehicle Insurance (Ga. L. 1947, p. 1506; Code, Ann., Ch. 56-20); that, pursuant to the provisions of the respective acts, the petitioners, as licensed rate-making organizations, filed with the Commissioner their applications, with supporting statistical data, for adjustments in rates or changes in rules affecting insurance in their respective lines; and that these filings of rate schedules were approved by the Commissioner. Thereupon the petitioners at considerable expense prepared and printed material necessary to be made available to the affiliated insurance companies and their agents for the purpose of putting these new rate adjustments into effect on February 1, 1958; and instructed the affiliated companies to destroy the old rate materials on that date. After these adjusted rates had become effective, each of the unincorporated rating associations received the following telegram, dated February 6, 1958, from the Commissioner:

"Hold in abeyance rate increases filed and effective February 1, 1958, as approved.

"Request for public hearing received and granted. Old rates to remain in effect until after public hearing to be held on February 26, 1958.

"Zack D. Cravey, Georgia Insurance Commissioner."

It was alleged that the Commissioner had no legal authority to suspend rates which had been approved, and that the purported notice of suspension of the approved rates was void. It was further alleged that the petitioners had expended large sums of money in putting the approved rates into effect; that the order

suspending the rates pending a public hearing had caused confusion in the operation of the insurance companies and in the minds of the public; and that they were subject to penalties and the loss of their license if the Commissioner found that they were wilfully violating his order. Their prayers were for an order restraining the Commissioner from requiring the petitioners to comply with his purported order of suspension of February 6, 1958.

The general demurrers of the Commissioner assert that these actions should be dismissed because: (1) the petitioners, being unincorporated associations and legal non-entities, cannot bring this action; (2) the petitioners, having no common interest, cannot bring this action; (3) they have an adequate remedy at law and have not exhausted their administrative remedies as provided for in the regulatory rate-making acts of 1947; (4) an injunction in this case would interfere with the administration of quasi-criminal laws; and (5) the Commissioner had the legal right to suspend the approved rates which became effective by operation of law, pending a public hearing to determine their validity.

■ The Commissioner's first contention is that the petitioners are unincorporated associations and as such are not legal entities entitled to bring suit in the courts of this State.

In every suit there must be a legal entity as the real plaintiff and the real defendant. This State recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue. *Parker* v. *Board of Education of Sumter County*, 209 *Ga.* 5 (70 S. E. 2d 369). Thus an unincorporated association may not sue or be sued in its own name unless authorized by law. An express statutory provision, however, is not indispensable to an association's capacity to sue and be sued in the association's name; such a suit may be maintained by virtue of a necessary implication arising from statutory provisions, as in cases where an unincorporated association is recognized as a legal entity by statutes which do not in terms authorize it to sue or be sued as such. United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344 (42 Sup. Ct. 570, 66 L. ed. 975, 27 A. L. R. 762); Brown v. United States, 276 U.S.

134 (48 Sup. Ct. 288, 72 L. ed. 500); Clark *v.* Grand Lodge of Brotherhood of Railroad Trainmen, 328 Mo. 1084 (43 S. W. 2d 404, 88 A. L. R. 150), Jardine *v.* Superior Court in and for Los Angeles County, 213 Cal. 301 (2 Pac. 2d 756, 79 A. L. R. 291).

We must, therefore, ascertain whether the three unincorporated rating bureaus have been sufficiently denominated by the statutes of this State as legal entities with the power, either express or implied, to bring suit for injunctive relief in the courts of this State.

The three rating bureaus are licensed under the provisions of the acts of 1947 (Ga. L. 1947, pp. 1506, 1523; Code, Ann., Chs. 56-20, 56-21), one of the purposes of both being to "authorize and regulate co-operative action among insurers in rate making." Code, Ann., §§ 56-2006, 56-2106 provide in part: "(a) A corporation, an unincorporated association, a partnership or an individual, whether located within or outside this State, may make application to the Commissioner for license as a rating organization for such kinds of insurance or subdivisions thereof as are specified in its application and shall file therewith (1) a copy of its constitution, its articles of agreement or association or its certificate of incorporation, and of its bylaws, rules and regulations governing the conduct of its business, (2) a list of its members and subscribers, (3) the name and address of a resident of this State upon whom notices or orders of the Commissioner or process affecting such rating organization may be served, and (4) a statement of its qualifications as a rating organization."

Both chapters provide that an insurer may satisfy his obligation to make rate filings by becoming a member of, or subscribing to, a licensed rating organization. Code (Ann.) §§ 56-2004(b), 56-2104(b).

Code (Ann.) § 56-2018 provides procedure for hearings before the Commissioner by an insurer or rating organization, and in subsection (c) provides that "any order or decision of the Commissioner shall be subject to review, which shall be on the basis of the record of the proceeding before the Commissioner and shall not be limited to questions of law, by appeal to any court of competent jurisdiction at the instance of any party."

Code (Ann.) § 56-2117 likewise provides procedure for hearing

by any "insurer or rating organization aggrieved by any order or decision of the Commissioner," and for review of any order or decision or the imposition of any penalty by the Commissioner, to the Superior Court of Fulton County.

These provisions recognize an authorized rating organization as a legal entity for the conducting of business pertaining to rating matters on behalf of its members and subscribers both before the Commissioner and in the courts. While the statutes do not expressly confer upon the rating bureaus the power to sue and be sued generally, they do empower them to appeal from orders and decisions of the Commissioner, regularly and lawfully entered in the prescribed manner, after the proper administrative procedures have been taken, to the courts of competent jurisdiction of this State. It would indeed be an anomaly of the law to allow these entities to review by appeal orders and decisions properly and lawfully made by the Commissioner, and yet afford them no substantial relief in the courts as against allegedly invalid and illegal orders and decisions of the Commissioner.

Thus it is our opinion that a proper construction of Code (Ann.) Chs. 56-20, 56-21 shows conclusively that the petitioners are legal entities and have the necessary standing to seek to enjoin an alleged invalid order or decision of the Commissioner, provided, of course, that all prerequisites for such relief are established.

■ The Commissioner's contention that the petitioners have not laid the proper foundation for class suits is without merit, under the view we take of this case, for they are seeking equitable relief in their own right as well as in their representative capacities for the insurers which are members of the various associations. The statutes that provide for the licensing of these rating organizations (Code, Ann., §§ 56-2006, 56-2106) authorize them to act in rate matters for the insurance companies which are members of and subscribers to the associations. The suspension order of the Commissioner affected all alike. The order is either valid or void as to all. Clearly each of the petitioners as rating organizations has an interest in common in challenging this order.

■ The Commissioner's next major argument raised by his demurrers is that in any event the petitioners have failed to

allege a proper case for the exercise of equitable jurisdiction, in that they have failed to exhaust their administrative remedies, and their appeal to a court of equity is premature, the Commissioner relying on Code (Ann.) §§ 56-2018, 56-2117 for this contention.

Code (Ann.) § 56-2018 in subsection (a) states: "Any insurer or rating organization aggrieved by any order or decision of the Commissioner, made without a hearing, may, within 30 days after notice of the order to the insurer or organization, make written request to the Commissioner for a hearing thereon. The Commissioner shall hear such party or parties within 20 days after receipt of such request and shall give not less than 10 days written notice of the time and the place of the hearing. Within 15 days after such hearing the Commissioner shall affirm, reverse or modify his previous action, specifying his reasons therefor. Pending such hearing and decision thereon, the Commissioner may suspend or postpone the effective date of his previous action." Subsection (c) provides procedure for review of any order of the Commissioner, after hearing, by appeal to a court of competent jurisdiction. Code (Ann.) § 56-2117 (a, c) provides substantially the same thing.

In some instances the Commissioner may issue certain orders in limited fields without the necessity for prior notice and hearing. For example, he may approve "as reasonable" rules and regulations of rating organizations (Code, Ann., § 56-2006(b)) ; he may adopt rules and regulations under Code (Ann.) § 56-2004(f) ; and he may approve applications filed under Code (Ann.) § 56-2004(g) ; and he may approve, in whole or in part, rate filings while they are pending and before they become effective— all without specific requirement of prior notice and hearing.

It is to these orders and decisions which the Commissioner may lawfully make without prior notice and hearing, that Code (Ann.) §§ 56-2018, 56-2117 apply, to insure due process and fair play to any party aggrieved by these basically routine decisions, which obviously do not necessitate hearings as a matter of course.

Clearly these sections have no application to an order of the Commissioner purporting to do something which he has no authority to do without prior notice and hearing. To hold otherwise

would nullify those requirements for notice and hearings in instances in which they are spelled out in the statute, as in Code (Ann.) § 56-2005(c, d) which enumerates the procedure for altering rates.

Furthermore, even if these sections were applicable, they would not afford the petitioners such an adequate remedy as would exclude the granting of equitable relief. "A remedy at law, to exclude appropriate relief in equity, must be complete and the substantial equivalent of the equitable relief. It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." *Atlantic Coast Line R. Co.* v. *Gunn*, 185 *Ga.* 108, 110 (194 S. E. 365). In this instance a hearing before the Commissioner and an appeal to a court of law would consume a long period of time, during which interval considerable damage would be incurred by the petitioners.

The doctrine that before resorting to equity one must exhaust his administrative remedies, such as an appeal to the administrative agency to review an administrative order, does not apply where the defect urged by the complaining party goes to the jurisdiction or power of the agency to issue the order. See Ogden City *v.* Armstrong, 168 U.S. 224 (18 Sup. Ct. 98, 42 L. ed. 444); Skinner & Eddy Corp. *v.* United States, 249 U.S. 557 (39 Sup. Ct. 375, 63 L. ed. 772); Hobbs *v.* Germany, 94 Miss. 469 (49 So. 515); McLean *v.* Jephson, 123 N.Y. 142 (25 N.E. 409). The complaint here is that the suspension of the rate order is void, and not that the order is deficient from mere errors in passing on the merits.

■ The Commissioner further raised the contention in his demurrers that the petitioners are not entitled to the equitable relief sought, since it is shown on the face of their petitions that an injunction in this case would involve interference with the administration of "quasi-criminal laws." The basis for this contention is that the Commissioner is authorized to impose penalties up to $50 for a violation and up to $500 for a wilful violation of the provisions of Chapters 20 and 21, and to suspend licenses of any rating organization or insurers failing to obey any order of the Commissioner. Code (Ann.) §§ 56-2017, 56-2115.

While the petitioners do allege that, by refusing to obey the disputed order of the Commissioner, they would be subject to fine and the suspension of their licenses to do business, such allegations are merely incidental to the relief sought—the enjoining of an allegedly illegal order to protect valuable business and property rights from irreparable injury. Such is a good ground for injunctive relief, whatever may be the nature of the Commissioner's discretionary power and the possible exercise thereof. See *Great A. & P. Tea Co.* v. *City of Columbus,* 189 *Ga.* 458 (6 S. E. 2d 320). In *Riley* v. *Wright,* 151 *Ga.* 609 (107 S. E. 857), the court held that the Commissioner of Insurance could be enjoined from exercising arbitrary power to revoke an insurer's license, said action being unconstitutional. And in *McIntyre* v. *Harrison,* 172 *Ga.* 65, 72 (157 S. E. 499), the court, in holding that an injunction is available to restrain the Georgia Public Service Commission from undertaking to regulate a business over which the power of regulation had not been conferred, stated: "It can hardly be questioned that if the commission is transcending its authority in this matter . . . and is threatening to subject the plaintiffs, their officers, agents and employees to the penalties provided by that act, a court of equity will enjoin the commission from so doing as an unwarrantable exercise of its power."

We now arrive at the basic question in issue. Does the Insurance Commissioner have the authority to suspend, modify, or change existing rate filings by an ex parte order of purported immediate application without any notice of any issues or without notice of hearing to the petitioners and without any hearing and evidence and findings? We are of the opinion that he does not. A careful reading of the statutes in question shows that, once the Commissioner has approved rate filings, and they have become effective by operation of law, he may not modify or change them other than by giving to every insurer and rating organization whose filings are questioned not less than 10 days' written notice of a hearing as provided in Code (Ann.) §§ 56-2005(c) (d), 56-2105(c) (d). These sections in subsection (c) provide: "If . . . the Commissioner finds that a filing does not meet the requirements of this Chapter, he shall, after a hearing held upon

not less than 10 days' written notice, specifying the matters to be considered at such hearing to every insurer and rating organization which made such filing, issue an order specifying in what respects he finds that such filing fails to meet the requirements of this Chapter, and stating when, within a reasonable period thereafter, such filings shall be deemed no longer effective. Copies of said order shall be sent to every such insurer and rating organization. Said order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in said order."

The Commissioner in his brief admits that the requirements of the statute were not followed, but submits the novel proposition that the Commissioner has implied authority to do that which the statute says he may not do other than in a specified manner. While it may be the general rule, as he contends, that an administrative official has those powers necessarily inferred or implied from or incident to, the powers and duties granted or imposed on him, it is clearly the rule in Georgia that, where the law authorizing that official to act, specifies the procedure to be followed in acting, he "is without power to disregard that procedure." *Bankers Life &c. Co.* v. *Cravey,* 208 *Ga.* 682 (3) (69 S. E. 2d 87).

Thus the Commissioner's ex parte order of February 6, 1958, purporting to suspend rate filings which had previously been approved by him and had become effective, was issued without authority and is invalid.

■ Equity will exercise its jurisdiction to restrain acts of public officers, boards, and commissions which are ultra vires and beyond the scope of their authority, outside their jurisdiction, unlawful or without authority. *Irwin* v. *Crawford,* 210 *Ga.* 222 (78 S. E. 2d 609), *Georgia Power Co.* v. *Georgia Public Service Comm.,* 211 *Ga.* 223 (85 S. E. 2d 14). The petitioners, therefore, having made substantial allegations in their petitions showing that such invalid order would work great hardship on them, causing irreparable injury to their business and property rights, and being without an adequate remedy at law, were entitled to equitable relief, and the trial court, accordingly, did not err in overruling the general demurrers of the Commissioner.

■ Finally, the Commissioner contends that the trial court erred in striking that portion of his answer which asked that the court determine whether or not the rate filings originally approved by him, which he subsequently attempted to suspend, are excessive. Such request was not germane to the subject matter of the petitions and was an attempt by the Commissioner to introduce new and distinct matter·into litigation, and such he cannot do. *Bowles* v. *White*, 206 *Ga.* 343 (57 S. E. 2d 187). It is for the Commissioner and not the courts in the first instance to determine whether the rate filings are excessive or inexcessive. The rates in question had already been approved by him, and were lawfully in effect at the time he issued his purported order suspending them. The legality of that order was the issue in dispute and would not be affected by the question of the adequacy of the rate filings themselves. The statute provides a remedy for those aggrieved by excessive rates to contest them. Code (Ann.) §§ 56-2005(d), 56-2105(d). Compare Oklahoma Inspection Bureau *v.* Insurance Board of the State of Oklahoma, 281 Pac. 2d 941.

The judgments overruling the demurrers to each of the petitions and sustaining the plaintiffs' special demurrer to specified paragraphs of the defendant's answer are not erroneous for any reasons urged.

*Judgment affirmed. All the Justices concur.*