INSURANCE RATING BOARD *vs.* COMMISSIONER OF INSURANCE.

Suffolk.    May 8, 1970. — July 13, 1970.

Present: CUTTER, KIRK, SPIEGEL, REARDON, & QUIRICO, JJ.

*Insurance*, Rating, Commissioner of Insurance.

Sections 6 (a) and 7 (a) of G. L. c. 175A, when read together, do not allow the Commissioner of Insurance to disapprove without a prior hearing rates filed under § 6 (a) by an insurer or licensed rating organization. [174]

A filing of rates for automobile physical damage insurance by a licensed rating organization with the Commissioner of Insurance pursuant to G. L. c. 175A, § 6 (a), stating the effective date of the filing and indicating the character and extent of the coverage contemplated, became effective on the date stated notwithstanding the fact that the rating organization had not furnished with its filing "information" upon which it supported the filing. [174–175]

The provision of G. L. c. 175A, § 19 (a), that any insurer or rating organization aggrieved by an order or decision of the Commissioner of Insurance made "without a hearing" may request a hearing by him applies only to orders or decisions which the commissioner is authorized by c. 175A to make without first holding a hearing. [175–176]

A filing of rates for automobile physical damage insurance by a licensed rating organization with the Commissioner of Insurance pursuant to G. L. c. 175A, § 6 (a), took effect on the effective date stated in the filing notwithstanding the facts that the commissioner on the date of filing purported to disapprove the filing and to forbid its use; and he could not thereafter suspend the effectiveness of the filed rates without first holding the hearing required by § 7 (a). [176–177]

Review of the legislative history of the Casualty and Surety Rate Regulatory Law, G. L. c. 175A, enacted by St. 1947, c. 641, § 1. [177–179]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on January 12, 1970.

The suit was reserved and reported by *Cutter*, J.

*Herbert P. Wilkins* (*Acheson H. Callaghan, Jr.*, with him) for the Insurance Rating Board.

*Walter H. Mayo, III*, Assistant Attorney General (*James P. Kiernan*, Assistant Attorney General, with him), for the Commissioner of Insurance.

QUIRICO, J. This is a suit for declaratory relief brought by the Insurance Rating Board (board) to determine whether the Commissioner of Insurance (commissioner) had authority to disapprove and forbid the use of certain insurance rates prior to a hearing on the issue. The case was reserved and reported by the single justice without decision upon the pleadings and a statement of agreed facts.

The board is an insurance rating organization licensed under G. L. c. 175A to file rates with the commissioner on behalf of its members and subscribers for automobile physical damage insurance (insurance). This insurance provides coverage with respect to fire, theft, comprehensive, collision, and other miscellaneous automobile physical damage losses on the insured's own car. On December 24, 1969, the board presented to the commissioner a letter setting forth rates for such insurance on private passenger and commercial cars, respectively, and stating the effective date for the revisions to be December 24, 1969. Certain documents purporting to support the necessity for the two revisions were also presented to the commissioner.

Later that day the commissioner wrote the board (1) to acknowledge receipt of the rate filings; (2) to indicate that the rule used by the board in determining the effective date of the filing was "entirely unclear, nebulous, and inconsistent"; (3) to inform the board that data filed in support of the revision in rates was "insufficient . . . incomplete and does not justify any rate revision, nor does it support the revision filed by . . . [the board]"; (4) to "disapprove said filing forthwith and [to] direct that said filing may not be used within this Commonwealth"; and (5) to notify the board that it could request a hearing on the matter under c. 175A, § 19 (a).

On December 29, 1969, the commissioner again wrote the board reiterating the points he had made in his earlier letter and directing its attention to c. 175A, § 18, which prescribes that any person or organization wilfully violating a provision of the chapter is punishable by a fine of not more than $500 for each such violation.

The next day, December 30, 1969, at approximately 3 P.M. the board delivered to the commissioner a letter stating that it regarded the December 24, 1969, filings as ineffective. At the same time the same revised rates previously filed on December 24, 1969, were again filed by the board to be effective as of the following day, December 31, 1969.[1] The commissioner immediately wrote the board to acknowledge that the rule of application as to the effective date had been modified but pointed out that no supporting data in addition to that submitted on December 24 had been filed. He again "disapprove[d] said filing forthwith and direct[ed] that said filing may not be used within this Commonwealth" and notified the board of its rights to a hearing under c. 175A, § 19 (a).

On January 12, 1970, the board filed its bill in equity for declaratory relief. G. L. c. 231A. The commissioner demurred to the bill on the ground that the board had failed to exhaust its administrative remedies. The board argues that its December 30, 1969, filings became effective according to their terms, and that the commissioner was without authority to disapprove them without first holding a hearing as required by G. L. c. 175A, § 7 (a). Moreover, it argues that the information presented with the filings adequately supported the rate increases. In response the commissioner contends that since the board did not comply with the conditions precedent set forth in c. 175A, § 6 (a), for an effective rate filing, there was no effective filing to which the procedure in § 7 (a) applies. He argues that if the board disagreed with his decision on the effectiveness of its filing, its proper course was to request a hearing under § 19 (a), that by not doing so it failed to exhaust its administrative remedies provided by statute and that therefore the demurrer to the board's bill in equity should be sustained.

It will be helpful to state the pertinent parts of several sections of c. 175A. Section 6 (a) describes the procedure

---

[1] The over-all average increase in premium limit for all coverages for private passenger cars was 26.9% and for commercial automobiles was 26.4%.

for filing rates. It provides, "Every insurer shall file with the commissioner or his designated representative . every manual of classifications, rules and rates, every rating plan and every modification of any of the foregoing which it proposes to use. Every such filing shall state the effective date thereof, which shall not be prior to the filing date, and such filing shall indicate the character and extent of the coverage contemplated. The commissioner may require such insurer to furnish the information upon which it supports such filing. Any filing may be supported by (1) the experience or judgment of the insurer or rating organization making the filing, (2) the experience of other insurers or rating organizations, or (3) any other factors which the insurer or rating organization deems relevant. A filing and any supporting information shall be open to public inspection after the filing becomes effective."

Section 7 (a) reads, "If at any time the commissioner finds that a filing does not meet the requirements of this chapter, he shall, after a hearing held upon not less· than ten days' written notice, specifying the matters to be considered at such hearing, to every insurer and rating organization which made such filing, issue an order specifying in what respects he finds that such filing fails to meet the requirements of this chapter, and stating when, within a reasonable period thereafter, such filing shall be deemed no longer effective. . . . ."

The legislative history shows emphatically that these two sections, when read together, do not allow the commissioner to disapprove rates and thereby make them ineffective without a hearing.

The board's filing of December 29, 1969, complied with the requirements of § 6 (a) that the filing "shall state the effective date thereof, which shall not be prior to the filing date," and that it "shall indicate the character and extent of the coverage contemplated." The commissioner argues that at his discretion he may interpose a third "condition precedent" to such a filing by requesting information which supports the filing. We do not agree. The statute states

that "the commissioner may require such insurer to furnish the information upon which it supports such filing." As we construe the statute, the insurer or rating board may provide such supporting information with its filing, but it is not required to do so. The failure to provide any such supporting information, or to provide what the commissioner deems adequate supporting information, with the original filing does not preclude the filing from taking effect in accordance with its terms. Although the commissioner may request such supporting information, or additional supporting information, such a request does not itself preclude the filing from taking effect, nor can it be used as the basis of any decision or ruling by the commissioner that the filing shall not take effect. We intimate no opinion on the power of the commissioner to suspend the filed rates in the event the insurer or board fails, neglects or refuses to file such supporting information when requested by the commissioner.

Section 19 (a), upon which the commissioner relies, has no bearing on this case. It provides, "Any insurer or rating organization aggrieved by any order or decision of the commissioner made without a hearing, may, within thirty days after notice of the order to the insurer or organization, make written request to the commissioner for a hearing thereon. The commissioner shall hear such party or parties within thirty days after receipt of such request and shall give not less than fifteen days' written notice of the time and place of the hearing. Within thirty days after such hearing the commissioner shall affirm, reverse or modify his previous action, specifying his reasons therefor. Pending such hearing and decision thereon the commissioner may suspend or postpone the effective date of his previous action."

It is clear from its context that § 19 (a) does not apply to a case such as this where another section, 7 (a), provides a hearing procedure which the commissioner has failed or refused to utilize.[2] Section 19 (a) is to be used only in those

---

[2] Many of the decisions or orders which the commissioner is authorized to make require a prior hearing. This is made clear in each of the following sections of c. 175A, giving the commissioner a particular power: License suspension for failure to meet licensing requirements, § 8 (a). Order re-

circumstances where the commissioner is authorized by the statute to act and make an order or decision without first giving the parties a hearing.[3] Its function is not that of providing an alternate method of review for those decisions made by the commissioner after holding a hearing required by the statute; nor is it that of providing a procedure for redress when the commissioner acts without first holding a hearing as provided by some other section of c. 175A.

On December 30, 1969, the commissioner purported to set aside the board's rate filing of the same date without first holding any hearing thereon as required by § 7 (a). The commissioner cannot by such unauthorized action place the burden on the board to go through the formality of re-questing a hearing under § 19 (a). The board's filing took effect on December 31, 1969, and the burden was then on the commissioner to grant a hearing under § 7 (a) before he deprived the filed rates of effect. Even though he did not so act, the board was not required to ask him for a hearing under § 19 (a) before seeking judicial relief in this court from the commissioner's failure, neglect or refusal to grant that hearing before suspending the rates.[4]

We are constrained to conclude that under the provisions of G. L. c. 175A the commissioner was without power in this

---

quiring discontinuance of unfair or unreasonable or other cooperative practice among rating organizations or among rating organizations and insurers inconsistent with c. 175A, § 8 (d). Decision that a member of a rating organization may charge a rate different from that filed by the rating organization, § 9. Order on appeal by a member or subscriber from the action or decision of a rating organization, § 10. Order on appeal by an insured from the action of a rating organization or an insurer, § 11. Order concerning issue whether the furnishing of information or assistance by an advisory organization is unfair, unreasonable or inconsistent with c. 175A, § 12. Order involving joint underwriting or joint reinsurance, § 13. License suspension because of failure to comply with an order of the commissioner, § 18.

[3] This type of decision or order includes: The denial of a license, § 8 (a). An order that a rating organization has unjustifiably refused admittance to an insurer as a subscriber, § 8 (b). Permission to a rating organization to restrict its membership or subscribership, § 8 (e). Order to discontinue using information furnished by advisory organizations not acting in compliance with § 12 or with an order of the commissioner, § 12 (d).

[4] It may be that one aggrieved by action of the commissioner which the statute authorized him to take without a prior hearing is required to seek a hearing under § 19 (a) before seeking judicial review under § 19 (c), but that is not the case before us.

case to prevent rates filed with him at 3 P.M. on December 30, 1969, from taking effect at the beginning of the next day, and that he was equally powerless to suspend their effectiveness without first holding a hearing under § 7 (a). *Cravey* v. *Southeastern Underwriters Assn.* 214 Ga. 450, 459. We need not consider at this time the issue whether the commissioner after having held a hearing may declare the previously filed rates ineffective as of the date of filing.

If our conclusion appears to be unduly restrictive of the power of the commissioner, thereby preventing him from prohibiting a rate filing from taking effect almost immediately upon filing, as in the case before us, it is because we conclude that to be the clear intent of the Legislature in enacting c. 175A. The intent is clear both from the language of the statute and from its history. Neither the commissioner nor this court is permitted to ignore that intent by substituting our views on what we think might be a preferable procedure.

General Laws c. 175A was enacted by St. 1947, c. 641, § 1,[5] on the recommendation of the majority of the Committee on Insurance, sitting as a Special Recess Committee to Study State Regulation of the Insurance Industry. The Committee wrote a lengthy report, dated May, 1947, and identified as "Senate No. 610," consisting of 100 printed pages. The report includes the text of proposed legislation later enacted as c. 175A, and a comparison thereof with other possible regulatory legislation. Ultimately the committee seemed to narrow its consideration to either c. 175A or another proposal described as the "All-Industry Bill." One of the major differences between the two was that under c. 175A a rate filing by an insurer took effect without the necessity of any prior approval whereas under the All-Industry Bill it became effective only upon affirmative approval by the commissioner.

A majority of the committee recommended the enact-

---

[5] The several amendments thereto by St. 1951, c. 138, St. 1954, c. 681, § 19, St. 1955, c. 384, §§ 8, 9, and St. 1969, c. 424, § 2, do not affect the result of this decision.

ment of c. 175A. The majority first criticised the All-Industry Bill by saying at pp. 18–20, "That bill imposes upon the commissioner the wholly impracticable duty of reviewing and approving thousands upon thousands of rates within a brief period of time. . . . That type of bill which has a waiting period before filed rates become effective, and which directs the Commissioner to review rates, is in substance, and must operate in practice as, a prior approval law. . . . The Commissioner of Insurance under that bill, by indirection, at least, may, through his power to approve or disapprove rates, exercise unreasonable control over the expenses of operation and internal management of insurance companies. We feel that it is not in the public interest to grant such power to any one individual holding an appointive office." The majority then recommended what is now c. 175A, and in so doing it said in part at pp. 20–21: "The basic elements of the recommended bills which provide for adequate regulatory controls in the public interest include the following: . . . 2. Insurance rates must be filed with the Commissioner of Insurance . . . either by the individual insurer or by a licensed rating organization, and the Commissioner has the right to require supporting information for such filing. . . . 4. Rates are not subject to a waiting period or to the approval of the Commissioner, and may be used immediately upon filing. 5. The . . . Commissioner is vested with power at any time upon his own initiative or upon complaint of any aggrieved person to investigate and determine whether the rates meet the statutory standards, and after hearing to forbid their use if they do not."

A minority of the recess committee recommended the enactment of the All-Industry Bill. It criticised (at pp. 27–28) the bills recommended by the majority: "They are a palpable sham because — (a) All filings become effective immediately, and therefore the Commissioner cannot — (1) Prevent the use of illegal rates. (2) Require refunds if excessive rates have been charged the public. (3) Require the company to collect additional premiums if inadequate

rates have been charged. (4) Correct or prevent unfair discrimination even between policyholders of the same company. (5) Prevent 'flash' filings. (6) Protect adequately the public against excessive rates. (b) Rates made by concert of action, namely, bureau rates (prohibited under the Sherman Act unless regulated by the States under the provisions of Public Law 15) could be used indefinitely. (c) There is absolutely no provision whatever in the majority's bills requiring the . . . Commissioner to review rates before they are charged to the public. Without express statutory authority, and unless expressly so provided in the insurance policy, the Insurance Commissioner is helpless to order a refund of an excessive premium charged the policyholder, and there is no such statutory authority provided in the majority's recommendations." The minority report thus predicted with accuracy the situation which has now arisen.

Faced with the choices presented by the report of the recess committee, the Legislature chose and enacted G. L. c. 175A. With the benefit of the report of its committee, we are compelled to conclude that it knew precisely what c. 175A was intended to accomplish, and we are therefore limited to giving effect to the legislative intent as thus expressed.

An interlocutory decree is to be entered overruling the demurrer filed by the commissioner, and a final decree is to be entered declaring that the commissioner had no authority under G. L. c. 175A to disapprove the board's filing of physical damage insurance rates made on December 30, 1969, without first holding a hearing as required by G. L. c. 175A, § 7 (a).

*So ordered.*