## A02A1850. FOSKEY v. VIDALIA CITY SCHOOL.
(574 SE2d 367)

ELDRIDGE, Judge.

On April 15, 1998, Oris Joseph Reed, a school bus driver for the Vidalia School District, in operating his bus in Vidalia, Toombs County, caused Joyce Foskey to skid into a curb. On August 13, 1999, Foskey sued Reed in Montgomery County Superior Court, the county of his residence, and a nonlegal entity, the Vidalia City School.

The defendants answered, raising official immunity, the lack of legal entity of the employer, and service as defenses. Foskey had sought to serve the Vidalia City School by making constructive service upon Reed as its agent; the Vidalia City School District, the correct legal entity, raised service defenses and issues as to the wrong party having been sued. Foskey amended her complaint as a misnomer to name the Vidalia City School Board as the employer-defendant, and the employer again answered, raising service as a defense and denying that it was a corporate entity, and it pled again that the Vidalia City School District was the correct legal entity. On January 19, 2000, Foskey had Mayor Ronnie Dixon of the City of Vidalia served for the Vidalia City School Board. On October 4, 2000, Foskey amended the complaint yet again to correct an alleged misnomer to finally name the Vidalia City School District as defendant. On November 27, 2000, the Montgomery County Superior Court entered an order dismissing Reed, based on official immunity, and transferred the case against the Vidalia City School District to Toombs County Superior Court. On February 27, 2002, the Superior Court of Toombs County entered an order dismissing the complaint against the Vidalia City School District, because the defendant had never been substituted as a new party by court order and served within the statute of limitation. Finding no merit to the appeal from this order, we affirm.

Foskey contends that the trial court erred in dismissing her complaint against the Vidalia City School District for failure to obtain an order substituting parties but instead amended her complaint to correct the misnomer that the Vidalia City School was the defendant.

a. Under OCGA § 9-10-132, misnomers are to be corrected by motion and court order: "All misnomers, whether in the Christian name or surname, made in writs, pleadings, or other . . . judicial proceedings, shall, on motion, be amended and corrected instanter without working unnecessary delay to the party making the same." Ga. Laws 1850, Cobb's 1851 Digest, p. 493; reenacted Code 1863, § 3413; Code 1868, § 3433; Code 1873, § 3483; Code 1882, § 3483; Civil Code 1895, § 5102; Civil Code 1910, § 5686; Code 1933, § 81-1206. To the extent that the Civil Practice Act, OCGA § 9-11-15, conflicts with OCGA § 9-10-132, the older statute must yield to the more recent statute as the latest expression of legislative intent; thus, now when a misnomer occurs, such misnomer may be corrected by amendment rather than court order when the correct defendant was served but its name is incorrectly pled. See *U. S. Xpress v. W. Timothy Askew & Co.*, 194 Ga. App. 730, 731 (391 SE2d 707) (1990). However, what constitutes a misnomer is defined under OCGA § 9-10-132, which is a broader statute. Id. at 731.

A motion to correct a scrivener's error can be made at any time prior to judgment and even after judgment and shall be granted by the trial court. *Weaver v. Bowers*, 218 Ga. App. 724, 725 (463 SE2d 50) (1995); *Smith v. Hartrampf*, 105 Ga. App. 40, 43 (123 SE2d 417) (1961).

"Christian name" under the Act includes the name given to a corporation. *Robinson v. Reward Ceramic Color Mfg.*, 120 Ga. App. 380, 381 (2) (170 SE2d 724) (1969). When a person has been sued in their trade name, this misnomer may be corrected to sue in their real or true name; however, the amendment cannot state a new cause of action or introduce a new party to the suit. *Hudgins Contracting Co. v. Redmond*, 178 Ga. 317, 318 (2) (173 SE 135) (1934). Thus, an amendment that seeks to correct the name of the right party sued shall be permitted, but if a new party on the record is brought into the suit, then such substitution should be refused. *Bell v. Ayers*, 82 Ga. App. 92, 96-97 (60 SE2d 523) (1950). Where the wrong corporation has been sued and served, the amendment to correct a misnomer cannot substitute unconnected parties. *McGowans v. Speed Oil Co.*, 94 Ga. App. 35 (1) (93 SE2d 597) (1956), overruled on other grounds, *Franklyn Gesner Fine Paintings v. Ketcham*, 252 Ga. 537, 540 (314 SE2d 903) (1984) (sued and served the sole owner and officer of closely held corporation and substituted subsequently the corporation for him); see also *Pacific Nat. Fire Ins. Co. v. Cummins Diesel of Ga.*, 213 Ga. 4, 7-8 (3) (96 SE2d 881) (1957). Where the correct corporate defendant has been served but called by the wrong name, it is not error to allow the name to be corrected to set out the true corporate name. *Knight's Pharmacy Co. v. McCall*, 181 Ga. 617, 618 (1) (183 SE 497) (1936).

Where the real defendant was properly served or acknowledged service, an amendment to correct a misnomer to set forth the correct identity of this defendant is not a change of parties requiring a court order, but a correction of a misnomer, even if the statute of limitation has run. *Northgate Village Apts. v. Smith*, 207 Ga. App. 479, 481 (2) (428 SE2d 381) (1993); *London Iron &c. Co. v. Logan*, 133 Ga. App. 692, 695-696 (2) (212 SE2d 21) (1975). Where the defendant can show no harm, the correction of a misnomer, even of another legal entity's correct name, is not an abuse of discretion. *Kelley v. RS&H of North Carolina*, 197 Ga. App. 236, 238 (2) (398 SE2d 213) (1990). The correction of a misnomer applies only when there is no change of parties and does not add a new and distinct party, which had not been previously served in the case. *Khawaja v. Lane Co.*, 239 Ga. App. 93, 94 (1) (520 SE2d 1) (1999); *Abbott v. Gill*, 197 Ga. App. 245, 246 (398 SE2d 225) (1990). However, where there is an actual corporation by the same name as the alleged misnomer that was properly served in error instead of the correct defendant, who was not served, there is no simple correction of the name as a misnomer under OCGA § 9-10-132 but an actual change in parties, requiring the appropriate procedure, because the plaintiff has sued and served the wrong corporate entity or person and not served the right defendant under the wrong name. OCGA §§ 9-10-132; 9-11-15 (c); 9-11-17; 9-11-21; *Dollar Concrete Constr. Co. v. Watson*, 207 Ga. App. 452, 453-454 (428 SE2d 379) (1993); accord *U. S. Xpress v. W. Timothy Askew & Co.*, supra at 730; *Pacific Nat. Fire Ins. Co. v. Cummins Diesel of Ga.*, supra at 4, hn. 3; *Nelson v. Sing Oil Co.*, 122 Ga. App. 19, 21 (176 SE2d 227) (1970); *Lamas Co. v. Baldwin*, 120 Ga. App. 149, 150 (1) (169 SE2d 638) (1969). However, where there has been actual service on the correct defendant but the defendant has been denominated by the wrong name in the pleadings, even if there exists another by such name, correction by amendment of this misnomer may be done, which does not constitute a substitution of parties. *Franklyn Gesner Fine Paintings v. Ketcham*, supra at 539-540; *Block v. Voyager Life Ins. Co.*, 251 Ga. 162-163 (1) (303 SE2d 742) (1983).

b. However, the above misnomer cases do not control herein, because the misnomer corrected by Foskey's first amendment changed Vidalia City School, not a legal entity, to Vidalia City School Board, real individual defendants, who acknowledged service but who still were the wrong defendants. Now with real defendants, but the wrong defendants, Foskey filed a second amendment to correct the same misnomer, and substituted without a court order Vidalia City School District, a new and different defendant, for the Vidalia City School Board defendants. When Foskey sued the Vidalia City School Board, the members acknowledged service for each member and raised an official immunity defense. Then, Foskey had in court

as the defendants the individual school board members but still did not have the employer of Reed, the Vidalia City School District, which was a corporate body subject to suit. After the second amendment, Foskey did not obtain an order from the trial court to substitute as a party the Vidalia City School District for the individual members of the Vidalia City School Board, the governing body of the Vidalia City School District. See OCGA §§ 9-11-17; 9-11-21. "[A municipal] board of education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued." (Citations omitted.) *Cook v. Colquitt County Bd. of Ed.*, 261 Ga. 841 (412 SE2d 828) (1992); see also *Hicks v. Walker County School Dist.*, 172 Ga. App. 428, 429 (2) (323 SE2d 231) (1984). "Only if the legislature in creating the Board expressly gave it the power to sue . . . is there an exception." (Citation omitted.) *Tidwell v. Coweta County Bd. of Ed.*, 240 Ga. App. 55, 56 (2) (521 SE2d 889) (1999). The board of education is not a political subdivision but is instead the governing body of the political subdivision. *Hicks v. Walker County School Dist.*, supra at 429 (2).

In 1906, the Vidalia City Board of Education was created as a separate legal entity from the City of Vidalia with power to sue on the security bond posted by its secretary and treasurer and to acquire, hold, and sell real property in its own name. See Ga. L. 1906, pp. 1104, 1105-1106, §§ 3, 6. However, in 1986, the enabling act was amended and transferred all these powers from the Vidalia City Board of Education to the Vidalia City School District. See Ga. L. 1906, p. 1104; Ga. L. 1986, p. 4862; Ga. L. 1987, p. 4227. In 1986, the School District of the City of Vidalia was granted the power to acquire, condemn by eminent domain, hold, and dispose of real and personal property in its name as a separate legal entity from the City of Vidalia. See Ga. L. 1986, pp. 4862, 4863-4864, §§ 2, 7.

When a governmental entity or quasi-public entity has independent legal status as a public corporation, agency, or authority, the legislative act creating such governmental entity generally confers one or more of the power and authority to contract, hold property, eminent domain, or sue and be sued. See generally *Cox Enterprises v. Carroll City/County Hosp. Auth.*, 247 Ga. 39, 43-45 (273 SE2d 841) (1981); *Knowles v. Housing Auth. &c. of Columbus*, 212 Ga. 729, 733-734 (95 SE2d 659) (1956); *State Ports Auth. v. Arnall*, 201 Ga. 713, 719 (41 SE2d 246) (1947). The fact that a governmental entity may have sovereign immunity from a tort action does not prevent such entity from being a separate legal entity or an entity that may sue and be sued. See generally *Knowles v. Housing Auth. of Columbus*, supra at 734; *State Hwy. Dept. of Ga. v. Marks*, 167 Ga. 397, 407 (1) (145 SE 866) (1928). Under Art. I, Sec. III, Par. I and Art. IX, Sec. II, Par. V of the 1983 Constitution of Georgia the power of eminent

domain is conferred upon the state, counties, municipalities, agencies, and authorities to take property for public purposes. The exercise of eminent domain is a constitutional grant which requires a judicial proceeding in the form of a condemnation action to sue in superior court as well as the reciprocal to be sued for inverse condemnation. See OCGA §§ 22-1-1 et seq.; 22-2-1 et seq.; *Shealy v. Unified Govt. of Athens-Clarke County*, 244 Ga. App. 853, 856-858 (537 SE2d 105) (2000); see also *Almand v. Bd. of Drainage Commrs.*, 147 Ga. 532, 540 (94 SE 1028) (1918). Since 1914, the power of eminent domain can only be exercised by a condemnation action, i.e., a suit in superior court. *State Hwy. Dept. v. Hendrix*, 215 Ga. 821, 823-825 (2) (113 SE2d 761) (1960). Thus, the grant of the power of eminent domain to a legal entity is the grant of power to sue and to be sued, even if limited only to a condemnation action or to being sued for inverse condemnation.

In 1987, the board of education was empowered to serve as the governing body of the school district and, further, was granted the power to acquire property by purchase, rental, donation, or eminent domain on behalf of the school district. See Ga. L. 1987, pp. 4227, 4229, § 2A. Thus, the board of education were granted the power to contract, to hold property, and to condemn property, and, arguably, implicitly to sue or to be sued. Thus, the grant of eminent domain conferred at least the limited power to sue and to be sued in direct and inverse condemnation actions as a constitutional matter. Likewise, exercise of the power to acquire and sell property involves the ability to contract; the ability to contract evidences a separate legal entity with the implied power to sue and to be sued over contracts. See generally *Cravey v. Southeastern Underwriters*, 214 Ga. 450, 453-455 (1) (105 SE2d 497) (1958). From the express grant of the power to sue and to be sued to a governmental entity, such "language means only that the entity has the status and capacity to enter our courts, and does not signify a waiver of sovereign immunity against suit." *Self v. City of Atlanta*, 259 Ga. 78, 80 (1) (377 SE2d 674) (1989). Therefore, the board of education constituted a separate legal entity from the school district, requiring a court order making a substitution of parties when the school board was sued in error instead of the school district.

Thus, to serve the Vidalia City School District, the governing body had to be served, i.e., the chief executive officer or clerk of the Vidalia City Board of Education and not the mayor. OCGA § 9-11-4 (e) (5). While, in this case, the mayor was served, he was neither the chief executive officer nor the clerk of the Vidalia City School District. Likewise, the acknowledgment of service by the board of education members in the claim against them as individuals did not acknowledge service on the school district's behalf. See OCGA § 9-11-

4 (e) (5). Therefore, the correct defendant, Vidalia City School District, was never served as required by statute and timely raised such defense. Id.

c. Since the individual members of the Vidalia City Board of Education were parties to the suit by amendment and by acknowledgment of service, then a trial court's order of substitution was necessary to make the Vidalia City School District a party substituted in their place. OCGA §§ 9-11-15; 9-11-17; 9-11-21; *Pascoe Steel Corp. v. Turner County Bd. of Ed.*, 139 Ga. App. 87, 89-90 (2) (227 SE2d 887) (1976); *Tidwell v. Coweta County Bd. of Ed.*, supra at 56 (2); see as to facts *Brock v. Sumter County School Bd.*, 246 Ga. App. 815, 816 (542 SE2d 547) (2000); *Coffee County School Dist. v. King*, 229 Ga. App. 143 (493 SE2d 563) (1997).

Under the Civil Practice Act, different parties, who have not been served, can be added, dropped, or substituted only upon motion and court order. This means that a party, who has never been served and who is not so closely related to a party served as to be an alter ego, and has been mistaken for a real or fictional party, who was served, can only be substituted by amendment and court order in the exercise of the sound discretion of the court. OCGA §§ 9-11-15; 9-11-21; *U. S. Xpress v. W. Timothy Askew & Co.*, supra at 731; *Locklear v. Morgan*, 127 Ga. App. 326, 331 (3) (193 SE2d 208) (1972). Thus, the trial court must exercise its discretion in determining the change of status of parties, and a court order is required to add new parties or drop existing parties; OCGA § 9-11-15 must be read in pari materia with OCGA § 9-11-21 to require such court order. *Clover Realty Co. v. Todd*, 237 Ga. 821, 822 (229 SE2d 649) (1976); *Young v. Rider*, 208 Ga. App. 147, 148 (1) (430 SE2d 117) (1993). Therefore, the Vidalia City School District was never procedurally made a party to the suit and never served prior to the running of the statute of limitation.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 7, 2002.

*M. Francis Stubbs*, for appellant.
*John T. Croley, Jr.*, for appellee.