A05A1502. GREEN et al. v. CENTRAL STATE HOSPITAL et al.
(621 SE2d 491)

MIKELL, Judge.

In this medical malpractice action, we affirm the summary judgment granted to the appellees, Washington State Prison (the "Prison"), Dr. Michael Rogers, the Prison's medical director, the Georgia Department of Corrections ("GDOC"), and the State of Georgia. On appeal, our review is de novo, and we construe the evidence, and all inferences therefrom, most favorably to the plaintiffs, as the opponents of summary judgment.[1]

So viewed, the record shows that Patricia Walker, a 36-year-old inmate who had been serving a life sentence at the Prison, died on August 18, 1999, in a county hospital as a result of massive pulmonary thromboemboli. Four months earlier, on April 26, 1999, Walker had gone to the Prison's infirmary complaining of dizziness, shortness of breath, and chest pain. She was taken to Central State Hospital (the "Hospital"), where Dr. Luc Nguyen-Tuong performed tests and diagnosed Walker with anterior myocardial ischemia, hypertension, and exogenous obesity. Nguyen-Tuong discharged her on April 30, 1999, with instructions to obtain an EKG in two weeks. An EKG was performed in the infirmary on May 14, 1999, which

---

[14] (Citation omitted.) *Denova v. State,* 268 Ga. App. 16 (1) (601 SE2d 400) (2004).

[15] (Citation and punctuation omitted.) Id. at 17 (2).

[1] See *Wang v. Moore,* 247 Ga. App. 666-667 (544 SE2d 486) (2001).

revealed no symptoms of heart disease. On August 17, 1999, Walker returned to the infirmary complaining of shortness of breath and dizziness. No immediate action was taken by the examining nurse. On the next day, Walker came back and was seen by a different nurse, who immediately summoned Rogers. Walker's skin was cold, clammy and pale; her vital signs quickly worsened, and despite life-saving measures, she died on the way to the hospital. An autopsy revealed that her heart was normal; the cause of death was massive pulmonary thromboemboli.

Jermaine Green, Walker's son, and Janice Green, the administratrix of her estate, filed a medical malpractice action on March 16, 2001, under the Georgia Tort Claims Act ("GTCA"), OCGA § 50-21-20 et seq., alleging that Walker's death resulted from improper diagnosis and treatment at the Prison's infirmary and at the Hospital. The plaintiffs named as defendants the Prison, Rogers, and the GDOC, which owns and controls the Prison; the Hospital, Nguyen-Tuong, and the Georgia Department of Human Resources ("GDHR"), which owns and controls the Hospital; and the State of Georgia. The expert affidavit attached to the complaint specified allegations of negligence only against the two physicians and a nurse at the Prison.

Discovery commenced. In interrogatory responses submitted on May 4, 2001, Rogers revealed that he was not employed by the GDOC. On August 22, 2001, a Prison nurse deposed that she was employed through the Medical College of Georgia ("MCG"). Rogers testified by deposition on April 17, 2002, that his position was "contracted by Medical College of Georgia."

On February 12, 2003, defendants GDOC, the Prison, Rogers, and the State of Georgia moved for summary judgment. The State argued that it was immune from suit. The other defendants argued that they were improper parties, primarily because the medical and nursing personnel at the Prison were employed by the Board of Regents of the University System of Georgia (the "Board") through MCG. In addition, defendant GDOC argued that it had not been properly served in accordance with OCGA § 50-21-35. The defendants attached to their motion the affidavit of Daniel Finn, Human Resources Director for Georgia Correctional Health Care ("GCHC"), an office set up at MCG to provide medical services for the state's prisons. Finn averred that the Board provides such medical services through the GCHC office at MCG and that Rogers and the nurses at the Prison were employed by the Board, not by the Prison or the DOC. According to the affidavit, the Prison's medical staff were not MCG faculty members or physicians but were specially hired to staff the infirmary at the Prison.

Three months later, on May 23, 2003, plaintiffs filed an amendment to the complaint "to correct alleged misnomer," seeking to add

the Board and MCG d/b/a GCHC as defendants. Defendants countered that any claim against the Board was barred by the failure to give the Board ante litem notice and by the two-year statute of limitation. The trial court granted summary judgment, ruling that the GDOC, Prison, and Rogers were not proper parties; that the Board and MCG could not be added as defendants; and that the defendants were not properly served under OCGA § 50-21-35.[2]

1. Plaintiffs first contend that the trial court erred in ruling that the GDOC and the Prison had not been properly served. In this regard, OCGA § 50-21-35 provides in pertinent part:

In all civil actions brought against the state under this article, to perfect service of process the plaintiff must both: (1) cause process to be served upon the chief executive officer of the state government entity involved at his or her usual office address; and (2) cause process to be served upon the director of the Risk Management Division of the Department of Administrative Services [("DOAS")] at his or her usual office address.

In this case, the plaintiffs failed to meet the second requirement. "The procedural strictures of the [GTCA], like its other terms, are strictly construed."[3] Here, the record shows that the Prison was served through its warden, and the DOC was served through its commissioner. Process was never served upon the director of the Risk Management Division of DOAS. Instead, on May 30, 2003, two years after filing suit, plaintiffs caused process to be served upon DOAS "through Carla Banks, the Executive Assistant to Commissioner Dana Russell." In *Shelnutt v. Ga. Dept. of Transp.*,[4] we held that the delivery of the ante litem notice to the commissioner of DOAS did not strictly comply with the requirement of OCGA § 50-21-26 (a) (2) that such notice be given to the Risk Management Division.[5] Even if service upon Commissioner Russell had been timely, plaintiffs did not strictly comply with the requirement of OCGA § 50-21-35 that process be served upon the director of DOAS's Risk Management Division. Summary judgment was properly granted to the GDOC and the Prison.

[2] The court had already granted Nguyen-Tuong's unopposed motion for summary judgment, and Nguyen-Tuong, the Hospital, and GDHR are not parties to this appeal.

[3] (Citations omitted.) *Curry v. Ga. Dept. of Corrections*, 232 Ga. App. 703-704 (1) (503 SE2d 597) (1998). Accord *Ga. Ports Auth. v. Harris*, 274 Ga. 146, 150 (2) (549 SE2d 95) (2001) (court "reaffirm[ed] that the GTCA must be strictly construed").

[4] 272 Ga. App. 109 (611 SE2d 762) (2005).

[5] Id. at 110.

2. In their brief, plaintiffs concede that, at all times relevant to the underlying action, Rogers and the medical staff at the Prison were employed by the Board. This admission is fatal to their claim against Rogers.

OCGA § 50-21-25 provides, in pertinent part:

> A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor. . . . A person bringing an action against the state . . . must name as a party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually.

Here, Rogers was acting within the scope of his duties as an employee of the Board, not the GDOC, and was not a proper party defendant. Moreover, he was immune from suit, as plaintiffs did not allege that he was acting outside the scope of his employment when he treated Walker.[6] Accordingly, the trial court properly granted summary judgment to Rogers.

3. Plaintiffs argue that the trial court abused its discretion in refusing to permit them to amend the complaint "to correct alleged misnomer." We disagree. An amendment to correct a misnomer pursuant to OCGA § 9-10-132 "cannot state a new cause of action or introduce a new party to the suit."[7] "The correction of a misnomer applies only when there is no change of parties and does not add a new and distinct party, which had not been previously served in the case."[8] The amendment sought to add the Board and MCG; they were new and distinct parties who had not been served with process. The trial court correctly denied the motion.

Plaintiffs contend, however, that the amendment was proper insofar as it sought to add the Board and MCG as defendants because plaintiff had fulfilled the requirements of OCGA § 9-11-15 (c). According to that Code section,

> An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings . . . if within the period provided by law for commencing the

---

[6] Compare *Wang*, supra at 669 (1), with *Keenan v. Plouffe*, 267 Ga. 791, 796 (3) (482 SE2d 253) (1997) (state-employed MCG physician held not entitled to official immunity in medical malpractice action brought by private-pay patient).

[7] (Citation omitted.) *Foskey v. Vidalia City School*, 258 Ga. App. 298, 299 (a) (574 SE2d 367) (2002).

[8] (Citations omitted.) Id. at 300 (a).

action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.[9]

In this case, the amendment was filed on May 23, 2003, long after the two-year statute of limitation expired. However, plaintiffs argue that the Board and MCG had knowledge of the claim as Rogers and the GDOC had been served with the lawsuit. Plaintiffs also claim that the Board and MCG should have known that but for the mistake in identifying them as the proper defendants, they would have been named in light of their employment of Rogers. Consequently, plaintiffs allege that the amendment relates back to the filing of the complaint. These arguments are misplaced.

"[U]nder the plain wording of OCGA § 9-11-15 (c), the defendant sought to be added must have actual notice of the institution of the action, not merely notice of the incidents giving rise to the litigation."[10] As the movant for summary judgment, appellees had the burden of showing that the parties sought to be added by amendment did not have actual notice of the lawsuit itself prior to the running of the statute of limitation.[11] As for the Board, appellees sustained this burden by tendering the affidavit of the Board's associate vice-chancellor of legal affairs, which shows that the Board never received either a notice of claim or service of a lawsuit in accordance with OCGA § 50-21-35. As for MCG, appellees were not required to show lack of notice because MCG would not have been a proper party. As plaintiffs conceded, Rogers and the medical staff at the Prison were employed by the Board, which would have been the only proper party under OCGA § 50-21-25 (b). It follows that the trial court did not abuse its discretion in denying the amendment pursuant to OCGA § 9-11-15.

4. Our holding in Divisions 1 through 3 makes it unnecessary to consider plaintiffs' remaining enumeration of error.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[9] OCGA § 9-11-15 (c).

[10] (Punctuation omitted.) *Khawaja v. Lane Co.*, 239 Ga. App. 93, 96 (2) (520 SE2d 1) (1999), citing *Harrison v. Golden*, 219 Ga. App. 772, 773 (1) (466 SE2d 890) (1995).

[11] *Swan v. Johnson*, 219 Ga. App. 450, 451 (1) (465 SE2d 684) (1995).

DECIDED SEPTEMBER 9, 2005 —
RECONSIDERATION DENIED SEPTEMBER 23, 2005 —

*Reynolds & McArthur, W. Carl Reynolds, Katherine L. McArthur, Bradley J. Survant,* for appellants.

*Thurbert E. Baker, Attorney General, Jennifer L. Dalton, Assistant Attorney General, Carlock, Copeland, Semler & Stair, Adam L. Appel, Stephen E. Curry,* for appellees.