## S07G1601. CLARK v. FITZGERALD WATER, LIGHT & BOND COMMISSION.
### (663 SE2d 237)

MELTON, Justice.

In *Clark v. Fitzgerald Water, Light & Bond Comm.*, 286 Ga. App. 36 (648 SE2d 654) (2007), the Court of Appeals held that the Fitzgerald Water, Light & Bond Commission, a governmental agency, was an independent legal entity capable of suing Bobby Clark for certain contract damages, despite the fact that it had not expressly been granted the right to sue and be sued when it was created by the Legislature. We granted certiorari to determine whether a governmental agency's power to sue and be sued may be implied solely from the express grant to the governmental agency of the power to contract. See *Cravey v. Southeastern Underwriters Assn.*, 214 Ga. 450 (1) (105 SE2d 497) (1958); *Foskey v. Vidalia City School*, 258 Ga. App. 298 (574 SE2d 367) (2002). For the reasons set forth below, we reverse.

The record shows that, on July 28, 1994, Bobby Clark entered into a contract with Fitzgerald Water, an agency and instrumentality of the City of Fitzgerald created to manage the City's water and electric needs. See Ga. L. 1914, p. 781; Ga. L. 1984, p. 5399. Pursuant to this contract, Fitzgerald Water agreed to install water and sewer lines in a subdivision being developed by Clark for an installation fee. After the work was done, Clark did not pay, and Fitzgerald Water brought suit in its own name. After the trial court determined that Fitzgerald Water had the legal capacity to bring suit, the case went to trial, and a jury awarded Fitzgerald Water approximately $44,000. Clark then appealed to the Court of Appeals, contending once again that Fitzgerald Water, as an artificial person, lacked the legal capacity to sue or be sued because it had not been granted that authority at the time of its creation. The Court of Appeals rejected this argument, finding generally that, because Fitzgerald Water had been given the ability to contract, it implicitly also had the ability to sue in order to enforce the contracts into which it had entered. In support of this determination, the Court of Appeals cited both *Cravey*, supra, and *Foskey*, supra.

As a general matter, there are three classes of legal entities with the inherent power to sue and be sued: "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." (Citation omitted.) *Cravey*, supra, 214 Ga. at 453 (1). An unincorporated association, on the other hand,

> may not sue or be sued in its own name unless authorized
> by law. An express statutory provision, however, is not

indispensable to an association's capacity to sue and be sued in the association's name; such a suit may be maintained by virtue of a necessary implication arising from statutory provisions, as in cases where an unincorporated association is recognized as a legal entity by statutes which do not in terms authorize it to sue or be sued.

Id.

In *Cravey*, three unincorporated associations acting as insurance rating bureaus sought to enjoin the Georgia Commissioner of Insurance from suspending insurance rate adjustments which he had previously approved. The Commissioner responded to the bureaus' action by arguing that such unincorporated associations were not legal entities capable of bringing suit. A close analysis of statutory law controlling rating bureaus, however, undercut the Commissioner's claims. We found that,

[w]hile the statutes do not expressly confer upon the rating bureaus the power to sue and be sued generally, they do empower them to appeal from orders and decisions of the Commissioner, regularly and lawfully entered in the prescribed manner, after the proper administrative procedures have been taken, to the courts of competent jurisdiction of this State. It would indeed be an anomaly of the law to allow these entities to review by appeal orders and decisions properly and lawfully made by the Commissioner, and yet afford them no substantial relief in the courts as against allegedly invalid and illegal orders and decisions of the Commissioner.

Id. at 455 (1). In other words, the clear intent of the statutes was to allow the ratings bureaus access to the courts to challenge decisions of the Commissioner in general. The power to challenge properly entered decisions in court was expressly given, and the power to challenge improperly entered decisions was implicitly extended by context.

In *Foskey*, the Court of Appeals considered, among other things, whether a school board had capacity to act as a separate legal entity capable of suing and being sued. The Court of Appeals determined that, because the school board had been given the power to acquire property through eminent domain, the school board also implicitly had the right to sue and be sued with regard to such takings of property. The Court of Appeals explained:

In 1987, the board of education was empowered to serve as the governing body of the school district and, further, was

> granted the power to acquire property by purchase, rental, donation, or eminent domain on behalf of the school district. Thus, the board of education [was] granted the power to contract, to hold property, and to condemn property, and, arguably, implicitly to sue or to be sued. Thus, the grant of eminent domain conferred at least the limited power to sue and to be sued in direct and inverse condemnation actions as a constitutional matter.

Id. at 302 (b). As noted by the Court of Appeals, "[t]he exercise of eminent domain is a constitutional grant which requires a judicial proceeding in the form of a condemnation action to sue in superior court as well as the reciprocal to be sued for inverse condemnation." (Citations omitted.) Id. The school board's power to access the courts, therefore, was necessarily included in its power to condemn. Like the rating bureaus in *Cravey*, the board of education in *Foskey* was given a power in which the ability to take court action was clearly implied.

In *Foskey*, however, the Court of Appeals, citing *Cravey*, went on to note: "Likewise, exercise of the power to acquire and sell property involves the ability to contract; the ability to contract evidences a separate legal entity with the implied power to sue and be sued over contracts." Id. *Cravey*, however, does not set forth this proposition and does not include a consideration of whether the mere ability to contract includes the power to sue and be sued. Furthermore, an analysis of Georgia precedent indicates that the mere power to enter contracts does not necessarily bring with it an implied power to sue.

In *Parker v. Bd. of Ed. of Sumter County*, 209 Ga. 5 (5) (70 SE2d 369) (1952), we expressly found that, despite the fact that the county board of education involved in that case had been granted the power to, among other things, enter into contracts for the construction, maintenance, and operation of schools, it did not have any ability to sue or be sued with regard to those contracts. We observed that the power to extend this right to sue or be sued rested solely with the Legislature, noting that

> [s]ince . . . county boards of education are vested with title to all school properties outside of independent school systems in their respective counties, and can take title to property as grantees or donees in a deed, gift, grant, donation, or devise, and are authorized and required to convey property in the name of the county board, and are authorized to make contracts for the construction, maintenance, and operation of schools . . . , they should, it seems to us, be enabled, in the name of the board, to maintain such

suits as might be necessary to protect their title to and possession of property so vested in them, and to enforce rights acquired under or defend claims made against them under and by virtue of their authorized contracts. *The procedure in such cases could be greatly simplified by the General Assembly, which alone has the power to do so, conferring upon them the right to sue and be sued in the name of the county board of education.*

(Emphasis supplied.) Id. at 7 (5).

Unlike the power to challenge the rulings of the Insurance Commissioner in *Cravey* or the power to condemn in *Foskey*, the simple power to enter into a contract does not necessarily require any access to a court in order for that power to be exercised. As such, the grant of such a power, standing alone, does not carry with it the implied power to sue or be sued. Any finding to the contrary would contravene our decision in *Parker* and invade the province of the Legislature.

Here, Fitzgerald Water was given the power to enter into contracts such as the one it entered into with Clark. This power to enter contracts, however, does not require access to a court to employ; therefore, it does not carry with it any implicit right to access the court system to enforce the power to contract. As a result, the Court of Appeals erred in its determination that Fitzgerald Water had the power to sue in its own name based solely on its power to contract. For that reason, the Court of Appeals' judgment must be reversed.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 30, 2008.

*Reinhardt, Whitley, Wilmot & Summerlin, Glenn Whitley*, for appellant.

*Jay, Sherrell, Smith & Braddy, Matthew G. Braddy, John E. Smith III*, for appellee.